## HOOKLESS FASTENER CO. v. G. E. PRENTICE MFG. CO.*
## No. 164.

Circuit Court of Appeals, Second Circuit.

Feb. 4, 1935.

CHASE, Circuit Judge, dissenting in part.

Merrell E. Clark, of New York City (R. S. Kelley, of Meadville, Pa., and Charles H. Walker, of New York City, of counsel), for plaintiff.

Robert Cushman, of Boston, Mass. (Richard F. Walker, of Boston, Mass., of counsel), for defendant.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit is for infringement of claims 7 and 10 of the Sundback slider patent, No. 1,661,144, relating to fastener sliders, granted to plaintiff's assignor on February 28, 1928; application filed January 27, 1925. It is used to mesh and unmesh the interlocking units arranged along the sides of a slide fastener. Claim 7 is for "a separable fastener slider comprising overlying spaced wings having inturned edges and having an internal reinforcing connection of deformed wing material extending longitudinally along the axis of said slider between said edges." Claim 10 differs, and has "means for guiding interlocking members, a bend directly connecting said wings, and integral longitudinal stiffening means within said bend shaped to maintain the wings in spaced relation independently of any other wing holding means and extending from said bend down to about a transverse line joining the outer wing corners."

The second patent in suit is Sundback, No. 1,813,433, for separable bottom stops which enable slide fasteners to be used on coats and other articles in which the two halves of the fastener must be completely separated. Claim 13 was held valid and infringed. Claims 5 and 6 were held invalid, and have since been disclaimed.

The one-piece slider of the first patent, here considered, has an integral reinforcing connection, or neck, of deformed wing material. The patent discloses the method of making such a slider to be a process known as "coining" for making the neck of deformed wing material. The neck portion serves the double function of supporting the wings and constituting the inner edges of the diverging channels. In discharging this latter function, it acts as a wedge to separate the interlocked stringers when the slider is moved down to open the fastener. The

*Writ of certiorari denied 55 S. Ct. 826, 79 L. Ed. —.

ends of the interlocking members or scoops run against the sides of the neck. The patent points out that the slider is subjected to severe operating stresses tending to spread it, as when closed under strain, and also often tending to contract it, as in a wringer when used on washable goods, and, if the fastener is to be serviceable, the slider must be rigid. The requirement for rigidity was pointed out by the defendant's president in his patent. Advantages are claimed apart from the method of manufacture. It displaced the yoke and rivet sliders, and it has met with very considerable commercial success since its introduction in the trade.

In its manufacture this sheet metal slider is provided with integral stiffening means which can be either inside or outside of the bend, and is preferably inside. It is made short by eliminating the bent neck in favor of a bent thickened reinforce integral with the wings and directly between them; this reinforce connection preferably being V-shaped to provide inner guide surfaces for the divergent channels. This stiffens the slider against both expansion and contraction in a compact manner without a special rivet because of bringing the distorting moments closest to the center of the slider. This permits the minimum of metal to be used with maximum strength without any added strengthening part. The slider surface is smooth and free from projections and external stiffening means because the reinforce to prevent distortion of the wings is located within the bend and between the wings, is integral with the wings, and extends longitudinally from the bend to a transverse line connecting the outer wing corners. Thus the entire length of the slider is stiffened. The interlocked stringers pass through a wide channel at the bottom of the slider and the separated stringers pass through separated diverging channels at the top. This is the method of operation.

Although the desirability of a one-piece slider was known and appreciated, one was not found to achieve the desired result until this one appeared. It is made cheaply of sheet metal and still, because of its hardened internal reinforcing connection of deformed wing material, it meets the requirements of strength, rigidity, and durability.

The prior patents to which we are referred (Judson, Nos. 504,037 and 557,207) were die cast sliders; the neck portions do not consist of deformed wing material. The Kuhn-Moos British patent, No. 14,358, was described by defendant's president as a slider made by die-casting process in accordance with which the wings and reinforcing element were made of unitary or integral construction. We think they were properly found below not to be anticipatory. They were clumsy and uneconomical to manufacture. The neck did not have the deformed wing material.

This slider was an improvement over the prior art, for it was made of one piece from sheet metal and without yoke or rivet; it had the necessary strength for commercial use and met with commercial success which speaks its inventive thought.

Claim 10 is narrower than claim 7 because it contains a limitation that "the integral longitudinal stiffening means" between the two wings of the slider shall extend a specific distance down into the slider, while claim 7 merely specifies the integral reinforcing connection extending longitudinally into the slider without specifying exactly how far it must extend. Claim 10 we think invalid, as found below, for it is not limited to deformed wing material.

Claim 7 is infringed, for the defendant's slider is made of deformed wing material. The method by which it is made is disclosed. It is described in the defendant's Prentice patent, No. 1,900,949. A blank is cut out of a strip of sheet metal; the edges of the wings are then turned up to form flanges, and the wings are then bent into parallelism. The neck is bent in this step so that it is slightly concave on the outside by means of a die. The cross-hatched arc-shaped sections are cross-sections of the neck at this stage of manufacture. The slider is then placed in a die, and a narrow punch is forced down against the top of the neck. The concave end of the punch pushes the neck down. Due to the form of the punch with the concave slot surface, the metal of the wings is forced inward by the bevel concave surface; as it moves down, that metal is fed down the concave surface progressively as the punch proceeds in, so that it is caused to flow from the wings down into the throat of the neck portion, and at the same time the wing portion on the side, because of the shape of the punch and due to pressing in of the two sides of the wings, is caused to flow down into the sides of the neck, and as a consequence the whole distribution of the metal in the wings and the metal originally in the neck has been changed, and has been caused to flow around and to take entirely new positions in relation to its original position, so that ultimately there is obtained a cross-

section which has depth and without appreciably thinning down the metal. Thus the deformed wing material of the plaintiff's invention is copied. The outer edges of the neck are rounded in somewhat, and the end of the pull piece attachment which is passed through the opening in the neck is clinched in place. Not only is the defendant's reinforcing connection made of deformed wing material, but the material is distributed longitudinally for the purpose of obtaining strength against the separation or compression of the wings in the same manner that the patent in suit distributes it. The longitudinal distribution of the material at the neck, in addition to increasing the moment of inertia or stiffness of the defendant's slider, also produces the inner guide surfaces of the divergent channels, and the hardness induced by the working of the metal enables the neck of the defendant's slider to withstand the wear of the ends of the scoops just as in the plaintiff's patent.

■ This is a product patent, and we think the court below fell into error in limiting it because the process of manufacture was disclosed in the patent. A product patent may not be limited to the exact process disclosed. E. I. Du Pont De Nemours & Co. v. Glidden Co. (C. C. A.) 67 F.(2d) 392; General Electric Co. v. P. R. Mallory & Co. (C. C. A.) 298 F. 579; Hemming Mfg. Co. v. Cutler-Hammer Mfg. Co. (C. C. A.) 243 F. 595; General Elec. Co. v. Laco-Philips Co. (C. C. A.) 233 F. 96.

There is infringement here because the defendant's product has all the physical characteristics enumerated in the claims, including the internal reinforcing connection or neck in which the deformed wing material has been hardened by working and has been redistributed longitudinally to increase the stiffness of the slider.

■ The court below held claim 13 of the "Separating End Patent," No. 1,813,433, valid and infringed. It reads:

"13. A separable fastener comprising a pair of stringers having opposed series of interlocking members on their adjacent edges, a slider for engaging and disengaging said members, and a separable end connection for said stringers at one end of said series of members, comprising a socket member on one stringer and an enlarged stiffened portion on the other stringer for insertion through the channel of said slider and into said socket said stringers having cooperating stop means attached thereto for limiting insertion of said stiffened portion, and an obstruction on said second stringer adapted to engage the endmost interlocking member on the first stringer and prevent movement of the slider to close the fastener until said stiffened portion has been inserted to substantially its limiting position."

The problem here was to prevent separation of the fastener. The requirements were that the ends be separable, that one of them be capable of passing through the slider, and that the units be prevented from operating behind the slider. The last was a vital matter, for, if they do open, they cannot be closed again, and the fastener is damaged. The only thing that can be done if the units open behind the slider is to break the fastener or to run the slider up to the top and take one of the stringers out of the slider by taking off the top stops. This was difficult for the ordinary user. This separation of the units behind the slider may be caused by the separation of the ends themselves, or by the meshing of the interlocking elements at a time when the ends are not fully engaged or not engaged at all. If the ends were not engaged, there is nothing to prevent the unmeshing of the units below the slider, and end fittings which are only partially engaged will come apart easily.

In the patent the socket is fastened to the corded edge of the tape by arms. This socket member is made from sheet material by bending a back cut out. The pin member of the fastener is a stiffened cord edge of the tape; the blocking member jams against the ends of the elements on the socket stringer to prevent the meshing of the elements in any but the proper relation. The co-operating member on the second or detachable stringer is formed so that it can be drawn through the slider, and is provided with an obstructing portion which interferes with the interlocking members on the opposed stringer and prevents the fastener from being closed except when the parts are brought together in the proper starting position. The blocking member serves as a stop to limit the insertion of the pin member into the socket by contacting against the top of the socket.

In the defendant's structures it uses the separating end fasteners. The upper portion of the pin member itself acts as a blocking member, projecting outwardly beyond the tape to such an extent that it will interfere with the ends of the interlocking members on the other stringer, just as the blocking member of the patent in suit interferes, and, in the more recent structures made by the defendant, the pin member has a slight

projection at the upper end that projects out a little further from the tape than the balance of the pin member, and the latter is made slightly curved, a little bit tapered for more readily being inserted through the slider and through the socket member, and works the same way. The defendant relies upon the fact that the obstruction on its devices is "the upper part of the lateral edge of the pin member," and not a member separate from the pin. But this does not avoid infringement. It is not an avoidance of infringement to make any two separate pieces while in the patent they are made in one integral piece or vice versa. Barber v. Otis Motor Sales Co. (C. C. A.) 240 F. 723. Moreover, the defendant's president admitted that in all of his commercial separating end fasteners he provided a blocking means for the purpose of preventing the movement of the slider upwards unless the pin member had been pushed way home, which is what the plaintiff does.

Reliance is placed on the Aronson patent, No. 1,060,412, of the prior art, for invalidity. This shows a separating end device adapted for use on a fastener of the hook and eye type. The interlocking elements on the right-hand stringer of the fastener are provided with hooks to engage with eye members which constitute the interlocking elements on the left-hand stringer. The interlocking members of the Aronson patent are of an entirely different character from the interlocking units of the unit type fastener made by the parties here. There was nothing in the Aronson device to prevent the elevation of the slider when the pin was not fully inserted, and, if the pin stringer of the Aronson fastener was not pushed way home, the opposing hooks and eyes would not be in one of the several positions relative to one another. He disclosed no means to prevent the elevation of the slider when the opposing stringers are imperfectly related.

The effective means of the patent in suit for insuring proper register of both the interlocking elements and the bottom stops by means of a blocking element required inventive thought, and we think the patent was properly sustained below and held infringed by the defendant.

Both patents are held valid and infringed.

Decree modified.

CHASE, Circuit Judge (dissenting in part).

I agree that claim 13 of the separating end patent, No. 1,813,433, is valid, and that the defendant has infringed.

I also agree that claim 10 of patent No. 1,661,144 is invalid. But I cannot agree that the limitation to "deformed wing material" in claim 7 is enough to make that a valid claim. This Sundback slider is just another of many good sliders. It will do only what is done by other sliders used with this type of fastener; nor will it do that differently or better. It is simply made by the old process of coining and so made cheaply. The phrase "deformed wing material" has no magic in it. There must always be some metal flow in any coining process. Unless that takes place, nothing is coined.

A slider consists of its wings, however reinforced or shaped, and the neck. Each wing and the neck must all be stiff enough to resist disabling distortion in use. As the neck is smaller than the wings and is not only required to resist equal strains but often greater (as when the force exerted on the wings is increased at the neck by such leverage action as the wings themselves supply), the obvious way to coin a slider with the essential attributes would be to so construct the dies that excess metal in the wings would flow under pressure to the parts to be strengthened. That is all the patentee did. Making metal flow under pressure by means of dies shaped to produce the desired slider does not differ in any essential from making metal flow between dies to produce a coin or anything else capable of being so manufactured. It does not involve inventive thought in this day and age. It is one of the oldest processes of manufacture known. To limit "an internal reinforcing connection" to one made from "deformed wing material" is but to limit the reinforcement to the only means available in the coining process. The limitation is not one of choice, but inherent; and for the purpose of making the claim valid is as futile as though the phrase had been "deformed slider material." The result is the same as though there had been in words, as there was in fact, no limitation not imposed by necessity.

I would hold claim 7 invalid.