The TORO COMPANY, Plaintiff,

v.

WHITE CONSOLIDATED INDUSTRIES,
INC., and WCI Outdoor Products,
Inc., Defendants.

Civil No. 4–95–656.

United States District Court,
D. Minnesota,
Fourth Division.

March 26, 1996.

Earl D. Reiland, David K. Tellekson, Paul H. Beattie, Jr. and Merchant & Gould, Minneapolis, MN, and Donald S. Trevarthen, The Toro Company, Minneapolis, MN, for plaintiff.

George F. McGunnigle, Jr., Lawrence J. Field and Leonard, Street & Deinard, Minneapolis, MN, and William McGuinness, David E. Sipiora and Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of plaintiff The Toro Company ("Toro") for a preliminary injunction. Based upon a review of the file, record and proceedings herein, and for the reasons stated below, the court denies plaintiff's motion.

## BACKGROUND

This case concerns the alleged infringement of United States Patent No. 4,694,528 (the " '528 patent"), which describes a hand-held convertible electric vacuum-blower apparatus ("vacuum-blower") of the type commonly used in yard work to collect leaves and other debris. The patent application was filed on July 18, 1986, and was issued on September 22, 1987. The '528 patent was assigned to Toro.

Toro is a Delaware corporation with its principal place of business in Bloomington, Minnesota. Defendants White Consolidated Industries, Inc. and WCI Outdoor Products, Inc. ("White") are also Delaware corporations with their principal place of business in Cleveland, Ohio. Both Toro and White are established manufacturers and distributors of various power lawn-care implements, including electric vacuum-blowers. White manufactures and distributes vacuum-blowers through its Poulan/Weed Eater subsidiary. White also distributes its vacuum-blowers under the trademark Paramount (principally in the western United States) and manufactures vacuum-blowers under an exclusive arrangement with Sears, Roebuck & Co.

A vacuum-blower is a lawn-care implement which can be used to selectively blow or vacuum leaves and other debris. The basic components of a vacuum-blower are a hous-

ing having an air inlet and an air outlet, a paddle-wheel shaped fan (called an "impeller") located inside the housing, and an electric motor attached to the impeller. The electric motor rotates the impeller at high speeds, thereby sucking air through the air inlet and expelling it through the air outlet. To use the device as a blower, a tube is placed over the outlet. Air is then drawn in the air inlet and expelled through the tube creating a high velocity column of air. The operator simply points the nozzle of the vacuum-blower to direct the air column at the debris.

The rotation of the impeller also creates a powerful vacuum. When used as a vacuum, a vacuum tube is placed over the air inlet. The operator attaches a refuse bag to the housing and over the air outlet nozzle. Debris is sucked up the vacuum tube, through the fan housing, out the nozzle and into the debris bag.

Air must flow into the air inlet for the vacuum-blower to function. There must also be a cover over the air inlet to protect the operator's fingers from the rotating impeller. Thus, a vacuum-blower must have a cover which allows air to pass into the inlet and at the same time prevents the operator's fingers from coming in contact with the rotating impeller. The operator's fingers are protected from the air inlet by the vacuum tube when the device is operating as a vacuum. The cover is only necessary when operating the device as a blower. The structural design of the air inlet cover is at issue in this case.

## A. The Toro Vacuum/Blower

The air inlet cover for the Toro product is completely detachable. When the vacuum-blower is operating as a vacuum, the cover is detached from the housing by twisting it to release it from the housing's interlocking tabs and pulling it away. After removing the cover, a vacuum tube is then inserted into the air inlet and secured. When operating as a blower, the air inlet cover is attached to the

housing by twisting it into place over the air inlet and securing the interlocking tabs. In this mode, air flows into the air inlet through the apertures in the cover and "beneath the lower edge of the rim" of the cover and the housing. '528 patent, col. 6, lines 36–40. The "rim" is spaced away from the side of the housing so that air may pass through the gap between it and the housing into the air intake. A "pressure ring" is attached to the inside of the cover in order to increase the velocity of the air column when operating in the blower mode. When the cover assembly is placed over the air inlet, the ring becomes positioned over the air inlet. This ring helps maintain the pressure differential between air inlet and air outlet sides of the impeller.

The '528 patent has 17 claims. Toro asserts that White's latest modifications to its vacuum/blowers infringes on claim 16 of the '528 patent and claim 17 which depends on claim 16.[1] Claim 16 provides as follows:

16. A convertible vacuum-blower comprising:

[i] a housing having an air inlet and an air outlet;

[ii] a motor supported in said housing;

[iii] an impeller having a plurality of impeller blades supported for rotary motion in said housing, in fluid communication with said air inlet and said air outlet, an rotably driven by said motor;

[iv] a removable air inlet cover for covering said air inlet, said air inlet cover having apertures for the passage of air through the cover;

[v] attachment means for removably securing said air inlet cover to said housing; and

[vi] said cover including means for increasing the pressure developed by said vacuum-blower during operation as a blower when air is being supplied to said impeller through said apertured cover.

'528 patent, col. 9, lines 15–19; col 10, lines 1–11.[2] Claim 17 of the '528 patent reads as follows:

---

1. Toro contends that White's latest vacuum-blowers literally infringe on claim 16 and also infringe on claims 16 and 17 under the doctrine of equivalents.

2. The bracketed numerals have been added by the court for ease of reference to the six limitations or "elements" that comprise claim 16.

17. A convertible vacuum-blower in accordance with claim 16 wherein said pressure differential increasing means includes a ring carried by said cover and disposed sufficiently close to said impeller to prevent air spill over between the high pressure side and the low pressure side of said impeller blades during rotation of said impeller.

'528 patent, col. 10, lines 12–18.

### B. The Accused Device

White's latest vacuum-blowers have a two-piece cover. Both components cover the air inlet when the device is operated as a blower. One component of the cover is the air inlet restrictor or "baffle." The air inlet restrictor is a separate, removable piece of molded plastic in the shape of a cylinder with a flange at the bottom. This removable "baffle" is the latest modification to the air inlet cover on White's products and replaces an older design in which a metal restrictor was permanently attached to the blower housing. The previous metal restrictor could not be removed for vacuuming. The second component of the cover is the air inlet lid which is attached to the blower housing by a hinge.

When operating as a vacuum, the White product covers the air inlet in roughly the same method as the Toro. The baffle is removed by twisting and removing it and then a vacuum tube is inserted into the air inlet allowing air intake and at the same time protecting the operator's fingers from the impeller. Unlike the Toro, the air inlet lid on the White product is not fully detached when vacuuming. Instead it is affixed to the housing by a hinge. The lid swings out of the way of the air inlet to allow the baffle to be removed and the vacuum tube to be inserted.

When operated as a blower, once the vacuum tube is removed, the operator must insert the baffle into the air inlet of the blower housing by twisting it into place. The baffle is secured to the air inlet by means of a detent. The hinged cover swings closed and snaps into place over the air inlet.

Toro asserts that White's latest vacuum-blowers infringe claim 16 and dependent claim 17 and seeks a preliminary injunction enjoining the production and sale of the alleged infringing vacuum-blowers. White argues that it successfully designed around the '528 Patent. White does not dispute that its vacuum-blowers share many common features with Toro's products. White responds, however, that its vacuum-blowers do not literally infringe claim 16 because they lack two limitations described in claim 16 of the '528 patent, namely a removable air inlet cover that "includ[es] means for increasing the pressure" in the blower mode (element vi) and "attachment means for removably securing" the air inlet cover to the blower housing (element v).

### DISCUSSION

■ The patent statute expressly provides for the grant of injunctions "in accordance with the principles of equity." 35 U.S.C. § 283. Because the relief is granted before a defendant has had an opportunity to fully defend itself at trial, "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Technology, Inc.*, 995 F.2d 1566, 1568 (Fed.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 923, 127 L.Ed.2d 216 (1994). Accordingly, the court has broad discretion in determining whether an injunction is warranted. *Ortho Pharmaceutical Corp. v. Smith*, 959 F.2d 936, 945 (Fed.Cir.1992).

■ The court considers four factors in granting a preliminary injunction:

1. Is there a substantial probability that the plaintiff will prevail on the merits;

2. Is there a substantial threat that the plaintiff will suffer irreparable harm if relief is not granted;

3. Does the irreparable harm to the plaintiff outweigh any potential harm that granting the preliminary injunction may cause the defendant; and

4. The public interest.

*Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc); *Hybritech, Inc. v. Abbott Labs., Inc.*, 849 F.2d 1446, 1451 (Fed.Cir.1988). The burden is always on the movant to show entitlement to preliminary relief. *Reebok Int'l Ltd. v. J.*

*Baker, Inc.,* 32 F.3d 1552, 1555 (Fed.Cir. 1994). No single factor is dispositive of the court's inquiry, and the court generally must "weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech,* 849 F.2d at 1451. A movant, however, must demonstrate a likelihood of success on the merits and irreparable harm in order to obtain a preliminary injunction. *Reebok,* 32 F.3d at 1556. The failure to establish either of these critical elements precludes injunctive relief.

## I. Likelihood of Success on the Merits

### A. Consent Judgment

White argues that Toro has no chance of success on the merits in this action because the air inlet cover design in White's latest vacuum-blowers is expressly permitted by the terms of the consent judgment entered in the 1993 case of *The Toro Company v. White Consolidated Indus., Inc. and WCI Outdoor Products, Inc.,* Civil No. 4–93–111 (D.Minn.) (Rosenbaum, J.) (*"Toro I"*). The court construes White's argument as an application of the doctrine of issue preclusion, also known as collateral estoppel.

■ There is a form of issue preclusion in connection with consent judgments that is not dependent on actual litigation of the matter. *Foster v. Hallco Mfg. Co., Inc.,* 947 F.2d 469, 480 (Fed.Cir.1991). The preclusive effect of a consent judgment results from an agreement manifesting an intention to be bound. *Id.* (citation omitted). The fact that a case involves questions concerning the alleged infringement of a patent does not preclude a court from according consent decrees preclusive effect. *See Bulk Store Structures, Ltd. v. Campcore, Inc.,* 1990 WL 92561 at *5 (N.D.N.Y. June 27, 1990) (citing cases).

■ In a consent judgment, a party may expressly reserve the right to re-litigate some or all of the issues that would have otherwise been barred between the same parties. *Epic Metals Corp. v. H.H. Robertson Co.,* 870 F.2d 1574, 1576 (Fed.Cir.), *cert. denied,* 493 U.S. 855, 110 S.Ct. 160, 107 L.Ed.2d 117 (1989). Any such reservation must be discerned within the four corners of the consent decree, however, and cannot be expanded beyond the decree's express terms. *Id.* For purposes of claim preclusion in a second suit, an infringement claim embraces only the specific devices before the court in the first suit. *See Young Eng'rs, Inc. v. United States Int'l Trade Comm'n,* 721 F.2d 1305, 1316 (Fed.Cir.1983).

■ The consent judgment states:

*RECITALS:*

(viii) The parties agree and understand that this judgment shall not have any effect on the rightful *scope* of the claims of U.S. Patent No. 4,694,528, and *shall not be construed as a limitation* on Toro's right to file a subsequent action against Defendants for infringement of U.S. Patent No. 4,694,528, *except as provided in paragraph 1 below.* (Emphasis added).

*JUDGMENT*

1. Toro, . . . , shall not seek to enforce U.S. Patent No. 4,694,528 against the modified vacuum/blower products manufactured with the modification shown in the sketches attached as Exhibit B, and sold by Defendants subsequent to June 3, 1993, it being expressly understood that the modified vacuum/blower product may from time to time be further modified.

2. [White], . . . ., shall not manufacture, use, or sell any vacuum/blower product that includes a pressure increasing ring attached to the air inlet cover during the remaining term of said patent. . . . .

White contends that the consent judgment provides them with a safe harbor from Toro's current claim of infringement. White argues that by the clear and unambiguous language of paragraph 2 of the consent judgment, it is precluded from manufacturing and selling *only* vacuum-blowers that include a pressure increasing ring "attached to the air inlet cover." White has modified the cover on its current vacuum-blowers such that the pressure ring, which White calls the "baffle," is not attached to the unit's air inlet cover. Thus, White claims that its modified vacuum-blowers cannot infringe the '528 patent.

Paragraph 1 limits Toro's right to sue White for infringement subsequent to the entry of the *Toro I* consent judgment. The scope of paragraph 1 is limited and states that Toro is prohibited from enforcing the '528 patent only against the vacuum-blowers shown in sketches attached to the consent judgment as Exhibit B. The vacuum-blower depicted in Exhibit B is an earlier non-infringing design that is not the design at issue in this case. Thus, paragraph 1 only limits Toro from suing White concerning a design that Toro conceded was non-infringing based upon its knowledge of White's designs at the time consent judgment was entered.

Paragraph 2 prohibits White from manufacturing and selling any vacuum-blowers "that includes a pressure increasing ring attached to the air inlet cover," i.e. the infringing design at issue in *Toro I*. White argues that this language prohibits Toro from claiming White's current products infringe on the '528 patent because any product where the pressure increasing ring is not attached to the air inlet cover would not, by definition, infringe.

White reaches this broad conclusion by focusing on the word "attached" to the exclusion of word "includes" in paragraph 2. Paragraph 2 *prohibits* White from manufacturing and selling vacuum-blowers with a pressure increasing ring *attached* to the air inlet cover; it does not *allow* White to manufacture or sell vacuum-blowers with a pressure increasing ring *included* in but not attached to the air inlet cover. Paragraph 2 neither states, nor would it be reasonable to infer, that only vacuum-blowers which include a pressure increasing ring attached to the air inlet cover infringe on the '528 patent.

White also construes the terms of the consent judgment apart from the design of the air inlet cover at issue in *Toro I*. In *Toro I*, the pressure increasing ring in the White vacuum-blowers was attached to the air inlet cover by four metal screws. Thus, paragraph 2 says nothing more than that White would not manufacture or sell any vacuum-blowers the parties agreed infringed the '528 patent. *See Young Eng'rs*, 721 F.2d at 1316 (stating for purposes of claim preclusion infringement claim only embraces specific devices before court in first suit).

In essence, White argues that language of the paragraph 2 supplants the claims of the '528 patent. Prohibiting what activities White can engage in, the manufacture and sale of infringing products, does not mark the limitations of the '528 patent and define the boundaries of the exclusive right that patent grants. The language of the *Toro I* consent judgment is clear and unambiguous. Read as a whole, it is clear that Toro did not bargain away its right to enforce the '528 patent against any vacuum-blower design other than that described in paragraph 1, and the parties intended to preclude the issue of infringement in future litigation only as to the vacuum-blowers described in paragraph 1.

The consent judgment in *Toro I* does not have any effect on the scope of the claims of the '528 patent, Toro's ability to enforce the '528 patent against White's latest vacuum-blowers, or Toro's likelihood of success on the merits in this matter.

## B. Infringement

■■■ A likelihood of success on the merits requires a showing of validity and infringement. *Hybritech*, 849 F.2d at 1451. White does not challenge the validity of the '528 patent.[3] Toro, the patent holder, has the ultimate burden of proving infringement. *Id.* Toro can establish infringement under either of two theories, literal infringement or infringement under the doctrine of equivalents. Toro contends that White's latest vacuum-blowers literally infringe the '528 patent and, alternatively, the product infringes the '528 patent under the doctrine of equivalents.

---

**3.** All patents are presumed valid. 35 U.S.C. § 282. A patent being presumed valid, a patentee need not submit any evidence in support of a conclusion of validity. *Orthokinetics, Inc. v.*

*Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1570 (Fed.Cir.1986). Additionally, the court notes that there is ample evidence in the record supporting the validity of the '528 patent.

### 1. Literal Infringement

Literal infringement requires that every limitation of a patent claim be found in the alleged infringing product. *Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1054 (Fed.Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). If one claim limitation is missing, there is no infringement as a matter of law. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed.Cir.1991).

A literal infringement analysis, whether at the preliminary or merits stage, entails two steps. First, the court interprets the patent's claims. *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed.Cir.1990). The claim is construed "in light of the claim language, the other claims, the prior art, the prosecution history and the specification, *not* in light of the accused device. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed.Cir.1985) (en banc) (emphasis in original). Second, the court compares the accused device to the interpreted claims. *Becton*, 922 F.2d at 796.

### 2. Claim 16

Toro asserts that the White vacuum-blowers literally infringe the '528 patent because they embody every limitation described in claim 16. White responds that its products do not literally infringe claim 16 because they lack two limitations described in claim 16: (1) they do not have a removable air inlet cover "including means for increasing the pressure" in the blower mode (element vi); and (2) they do not include "attachment means for removably securing" the air inlet cover to the blower housing (element v). The validity of White's argument turns on the meaning of the terms "including" and "removably securing."

Claim interpretation is a question of law to be decided by the court. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 822 (Fed. Cir.1992). A dispute over a term within the claims does not generally create a fact question. *Johnston v. IVAC Corp.*, 885 F.2d

1574, 1579–80 (Fed.Cir.1989); *Becton*, 922 F.2d at 797. When the meaning of a term used in the claims is disputed, the court looks to the language of all the claims, the specifications, the prosecution history and the prior art.[4] *SRI Int'l*, 775 F.2d at 1108; *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1566 (Fed. Cir.1992). Although the claims are interpreted in light of the specification, statements in the specification should not be read into the claims as limitations.

White conceded in its answers to Toro's interrogatories that the air inlet covers on its latest vacuum-blowers embody elements i–iii of claim 16. (Beattie Aff. II Ex. 1 at 6). Moreover, in their memorandum of law is response to Toro's motion for a preliminary injunction, White does not respond to Toro's claim that White's vacuum-blowers are covered by element iv of claim 16. Only elements v and vi appear to be in dispute in this case. However, the terms at issue in limitations v and vi are dependant on the definition of the term "cover" in limitation iv. Therefore, before the court can interpret "including" and "removably securing," it must define what constitutes a vacuum-blower's "cover."

#### a. "cover"

Defining what constitutes a vacuum-blower's "cover" is a critical issue. Toro defines "cover" functionally. As used in element iv of claim 16, "cover" refers to whatever is used to exclude fingers or clothing from the impeller, while permitting air flow to the impeller. The term "cover" does not imply any particular design. (Pl.Supplemental.Mem. at 2).

So construed, Toro argues that the White air inlet "cover", which includes a hinged outer lid and a removable baffle, is contemplated by claim 16 because both pieces together *function* as a cover. (Pl.Mem. at 12). The two-piece White cover, like the one-piece Toro cover, "perform[s] the covering function of restricting access to the air inlet." (Pl.Supplemental Mem. at 2). Toro asserts

**4.** Neither party has offered probative evidence from the '528 patent's prosecution history to define the terms in claim 16.

that the language of claim 16, which defines "cover" functionally, is broad enough to include both the "one-piece and two-piece [covers], and protects the full scope of the removable cover versions." (Pl.Mem. at 16–18). Thus, any cover that restricts access to the air inlet necessarily "includ[es] means for increasing pressure." (Pl.Mem. at 18).

White rejects Toro's functional definition. White does not explicitly present its own definition. Instead, White refers to limitation vi of claim 16 to show that a "cover including a means for increasing pressure" means the '528 patent claims a removable one-piece air inlet cover with a pressure ring attached to or included as part of the cover. (Def.Mem. at 18). White further argues that Toro has repeatedly admitted in its pleadings that the pressure increasing means described in the '528 patent are claimed as part of the air inlet cover and not as a separate removable competent. (*Id.* at 19).

According to the common dictionary definition, the noun "cover" means: "1: Something that protects, shelters, or guards ... 2: something that is placed over or about another thing ... a: LID, TOP." *Webster's Third New Int'l Dictionary* 524 (1986). Both the outer lid component and the baffle of the White "cover" cover the air inlet during blowing operation and are both removed from the air inlet cover during vacuuming. Both pieces lie over and conceal the air inlet cover and guard the impeller when needed and can be removed as needed. As the Second Circuit has stated, "It is not an avoidance of infringement to make any two separate pieces while in the patent they are made one integral piece or vice versa." *See Hookless Fastener Co. v. G.E. Prentice Mfg., Co.,* 75 F.2d 264, 267 (2d Cir.), *cert. denied,* 295 U.S. 748, 55 S.Ct. 826, 79 L.Ed. 1693 (1935). Moreover, as Toro points out, removable covers may take many forms other than the designs at issue in this case. *See* (Pl.Mem. at 14).

The court has reviewed the ordinary meaning of the claim language, as well as the definitions offered by the parties. The court concludes that "cover" as used in the '528 patent includes the entire cover assembly and not only the air inlet lid as White argues.

Thus, the '528 patent claims both one-piece covers and two-piece covers that include a separately removable pressure ring.

### b. "including means for increasing the pressure"

 The critical issue for this element of claim 16 is the meaning of the transitive verb "including." Both parties assert that their positions are supported by the ordinary meaning of "including." Terms in a claim must be given their ordinary meaning unless it appears from the patent that the inventor used them differently. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1387 (Fed.Cir.1992). A dictionary may be consulted to establish the ordinary meaning of a disputed term, however. *Hoganas AB v. Dresser Indus., Inc.,* 9 F.3d 948, 951 & n. 8 (Fed.Cir.1993).

Toro offers the following definition of "including": "... to take in or compromise as a whole." *Webster's Ninth New Collegiate Dictionary* 609 (1988). White defines "including" as: "to have as part of a whole; contain; compromise ...; 3. to consider as part of a whole. *Webster's New World Dictionary* 1143 (2d College ed., 1978). "Including" suggests the containment of something as component or subordinate part of a larger whole. *See Webster's Ninth New Collegiate Dictionary* at 609.

White argues that the ordinary meaning of "including" demonstrates that Toro "did not claim a removable pressure ring, but rather a pressure ring *attached to or included as part* of a removable air inlet cover. *See* (Def.Mem. at 18) (emphasis added). This argument is flawed, however, because "including" is not a synonym for "attached." "Attached" is defined as "joined; connected; bound." *The Random House College Dictionary* 87 (Revised ed. 1980). Simply put, "including" has a broader meaning than "attached." While a pressure ring that is attached to an air inlet cover must necessarily be included in the cover, a pressure ring may be included as a component or part of an air inlet cover without being attached. Thus, the use of the term "including" in claim 16 demonstrates that the pressure ring does not

have to be attached to a removable air inlet cover to infringe.[5]

Although resort to dictionary definitions has proved productive, more guidance is found in the language of the patent claims and the specifications. The term "including" as used in claim 16 cannot be read in isolation from the language of the rest of the '528 patent. While "the inventor may be his own lexicographer ... he must use his words consistently in the claims and in the specifications." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1421 (Fed.Cir. 1988) (citation omitted). The interpretation advanced by White cannot be supported when the term "including" is used in context.

Claim 17 states that pressure increasing means "includes a ring carried by said cover." '528 patent, col. 10, lines 12–18. Based on this language, White argues that claim 17 "makes clear that the structural arrangement claimed in Claim 16 entails pressure increasing means "'carried by said cover.'" (Def.Mem. at 17). The court disagrees.

■ The doctrine of claim differentiation precludes a reading of claim 17 limitations into claim 16 in determining whether White's latest vacuum-blowers literally infringe. *See D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed.Cir.1985). The Federal Circuit has quoted with approval:

> Where some claims are broad and other are narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or avoid infringement.

*Id.* This rule is well established and enjoys an "immutable and universally applicable status comparatively rare among rules of law." *Id.*

Claim 16 states that the "cover includ[es] means for increasing the pressure developed by said vacuum-blower," a cover may be made up of more than one piece. *See* supra pp. 1015–16 (discussing the definition of "cover"). Claim 16 includes both the one-piece

and two-piece removable cover designs. Claim 17 depends on claim 16 and therefore includes its limitations. Claim 17 focuses on the narrower preferred embodiment, a one-piece cover design in which the pressure ring component is attached to or "carried by" the remaining portions of the cover. Accordingly, White's argument that claim 17 limits what is claimed in the '528 patent violates the doctrine of claim differentiation. *Laitram v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 866 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1068, 109 S.Ct. 2069, 104 L.Ed.2d 634 (1989).

■ The court's interpretation of "including" also finds support in the specification which states that "[i]n a preferred embodiment, ... [t]he device includes a ring carried by the cover[.]" '528 patent, col. 2, lines 23–32. "References to a preferred embodiment, such as those often present in a specification, are not claim limitations." *Laitram Corp.*, 863 F.2d at 865 (citing *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed.Cir. 1985) (en banc)). The claims, not the specifications, measure the protected patent right to exclude others. *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed.Cir. 1988). The specifications may be referred to in defining the terms used in the patent claims, however. *Minnesota Mining & Mfg.*, 976 F.2d at 1566. The specification also explains that a one-piece cover is the preferred embodiment because "the operator [need not] manually insert or remove a replaceable ring." '528 patent, col. 7, lines 6–12. Claim 16 neither states nor implies that the replaceable pressure ring described in the specifications must be fastened or attached to the air inlet cover. The reference to both the preferred embodiment and alternative embodiment in the specifications demonstrates that both embodiments are claimed by the '528 patent.

■ The interpretation of "including" urged by White is not supported by the

---

5. White states that attempting "to argue that "'including'" ... does not necessarily mean "'attached'" ... would be a useless diversion." (Def.Mem. at 20). It appears that White failed to consult the definition of attach before making this statement. It is evident, however, that the court found defining the relevant terms of claim

16 to be a productive exercise. Moreover, if the inventor intended the '528 patent to claim only a pressure ring attached to the air inlet cover, those terms could have been used. The absence of the term attached in claim 16 indicates that what is claimed in the '528 patent is not so limited.

ordinary meaning of that term, the patent language, or specifications. The court concludes that the preferred embodiment practiced by Toro and the alternate embodiment practiced by White are both claimed by the '528 patent. The pressure ring need not be attached to the air inlet cover to literally infringe the '528 patent. Accordingly, the court holds that Toro has demonstrated that the two-piece air inlet cover practiced by the White vacuum-blowers literally infringes element vi of claim 16 of the '528 patent.

### c. "removably securing"

■■■■■ Toro argues that both the air inlet cover component and the "baffle" component of the White cover have attachment means for "removably securing" the air inlet cover to the housing as claimed in element v of claim 16. Toro contends that these facts were admitted by David Haupt, an engineer employed by White. See (Beattie Aff.Ex. D, Haupt Dep. at 233–34, 244–45). White argues that although the air inlet "baffle" is removably secured from the housing, the outer lid portion of the air inlet cover is not removably secured because it is attached to the housing by a hinge. See (Def.Mem. at 25); (Mattson Decl. at ¶¶ 15–19); (Haupt Decl. at ¶ 20).[6] White further asserts that Toro claimed an air inlet cover that is completely detachable from the vacuum-blower housing. (Def.Mem. at 24).

The adjective "removable" is defined as: "capable of being removed, displaced, transferred, dismissed or eradicated." *Webster's Third New Int'l Dictionary,* 1921 (1981). "Secure" is defined as "4b: to make fast: tie down: SEAL." *Id.* at 2053. Another dictionary defines secure as "12. to make firm or fast: as by attaching." *The Random House College Dictionary* 1190 (Revised ed. 1980).

Claim 16 does not state that the cover is removable or secured; claim 16 states that the cover is removably secured. Removably is an adverb which modifies the verb securing. Thus, a cover which is not removably

secured to the housing will either be attached to the housing and therefore not removable, or not secured at all. According to the common meaning of its terms, a removable secured cover as described by the '528 patent could take many forms, including hinged covers, tethered covers, covers rotated about a pivot and covers that are completely detachable from the blower housing such as the Toro model.

White bases its entire argument concerning the definition of "removably securing" on the *McCulloch* case. In that case, the pressure ring was attached to the cover lid. See (Sipiora Supplemental Decl.Ex. C at 5). Thus, although the one-piece cover in *McCulloch* was the same as the design at issue in *Toro I,* it is not the same design as the two-piece cover at issue in this case. Because the facts in this case are different from those in *McCulloch,* the *McCulloch* court's legal conclusions have limited applicability to the instant matter.

The court's prior definition of the term "cover" aids its interpretation of the terms "removably securing." There is no dispute that the "baffle" piece of the White cover is removable from the air inlet and the housing. White contends that the outer lid piece of the cover is not removably secured, however, because it is attached to the housing by a hinge. This argument fails for two reasons. First, Haupt, White's own witness, testified in his deposition that the outer lid was removably secured. See (Beattie Aff.Ex. D., Haupt Dep. at 233–34). Second, the '528 patent claims both one-piece and two-piece air inlet *covers, not simply cover components. See* supra pp. 1015–16. White's "cover" is comprised of the air inlet lid and the "baffle." Although White concedes that the "baffle" is removably secured from the housing, both cover components must be removed from the air inlet for vacuuming operation. White cannot avoid literal infringement by arguing that its two-piece "cover" does not

---

**6.** It is well established Eighth Circuit law that a statement in a declaration contradicting earlier sworn deposition testimony cannot create a fact issue. As such, the court will rely on Haupt's deposition testimony. White also argues that the reasoning of another court on this same issue is

compelling. *See The Toro Company v. McCulloch Corp.,* Civil No. 3–94–664 (D.Minn., Oct. 21, 1994) (*"McCulloch "*). That decision does not relieve this court of its obligation to make findings of fact and conclusions of law in this matter, however.

literally infringe element v of claim 16 because something less than the "cover", the outer lid component, is not removably secured to the housing.

Additionally, the specifications of the '528 patent provide that a hinged cover is removable. Column 1, line 18 states:

> During use as a vacuum, the apparatus is converted by removing the apertured cover and placing a vacuum nozzle in communication with the air inlet, and substituting a debris bag for the blower nozzle at the air outlet. U.S.Pat. No. 4,325,163 issued on Apr. 20, 1982 to Mattson et al is one such prior art apparatus.

The Mattson patent shows a hinged cover. *See* (Beattie Aff.Ex. I). Thus, the '528 patent provides a cover lid that is "removably secur[ed]" must be capable of moving away from the air inlet to permit insertion of the vacuum tubes, but does not necessarily need to be completely detachable from the blower housing.

The court has considered the meaning of the language used in the '528 patent and compared this language to the accused device. After making this analysis, the court concludes that White's cover on its latest vacuum-blowers literally infringes the '528 patent because every limitation in claim 16 is present in the accused device. Based this finding, the court does not reach the issue of infringement under the doctrine of equivalents.[7]

## II. Irreparable Harm

■ In matters involving patent rights, a strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee. *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed.Cir.1987), *abrogated on other grounds, Markman v. Westview*, 52 F.3d 967, 977 (Fed.Cir.1995). "This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during ligation, and the passage of time can work irreparable harm." *Id.* "In

view of the fact that the principal right afforded by a patent is the right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Id.* This presumption is rebuttable, however. *Reebok*, 32 F.3d at 1556. The presumption is merely a procedural device that shifts the ultimate burden of production on the issue of irreparable harm onto White. *See id.*

■ Toro is entitled to rely on the presumption of irreparable harm in this case because it has made a strong showing of likelihood of success on the merits, continuing infringement and the validity of the '528 patent. In addition to the general presumption of irreparable harm, the only evidence of irreparable harm Toro has submitted in support of this motion is the affidavit of Frank P. Conney, Toro's Director of Sales, Mass Retail. Conney states that it is difficult to quantify and apportion the monetary damage caused by the White vacuum-blowers at issue in *Toro I* and White's current models. (Conney Aff. ¶ 20). He also states that to consumers, the air velocity and to a lesser extent the CFM (the amount of air pushed from the end of the blower nozzle) are the vacuum-blower's two key selling points. *Id.* at ¶ 19. White's new products, which have a higher miles per hour rating than Toro's, are harming Toro's "goodwill, reputation, and credibility and Toro's standing in the market place as the premier super blower." *Id.* at ¶ 21. Conney also alleges that White is selling its new vacuum/blowers at prices below Toro which has caused Toro to lose market share and hindered its sales growth. Toro argues that lost customer and retailer goodwill and lost sales are difficult to quantify. *Id.* at ¶¶ 27–30. Based on Conney's claims, Toro argues that it will be irreparably harmed if the court denies it motion for an injunction on its patent claim.

White argues that Toro's assertions of economic harm do not constitute irreparable harm as a matter of law. Toro's alleged harm is no different than that alleged by any

---

7. Without deciding the issue, the court notes that, based on the record before it, Toro also has a reasonable likelihood of success on the merits

at trial on the issue of infringement under the doctrine of equivalents.

patentee practicing his invention and that Toro's difficulty in calculating losses in market share and speculation that such losses might occur do not amount to proof of irreparable harm.

White further contends that Toro's economic arguments are factually irrelevant or erroneous for four reasons. First, White asserts that Toro has been fully compensated for the past harm it suffered as a result of the sale of the vacuum-blowers at issue in *Toro I*, and cannot use that case to support its claim of irreparable harm in this matter. Second, White argues that Toro's own documents reveal that White's earlier non-infringing vacuum-blowers surpassed Toro's "Super Blower" air velocity. (Sipiora Decl.Ex. A & B).[8] Third, White asserts that Conney's statement in his affidavit that the "Toro 850 utilized the patented ring design to improve performance" is contradicted by Conney's admission in his deposition that he had no personal knowledge of whether the patented cover actually improved the 850's performance. (Conney Aff. at ¶ 5); (Sipiora Supplemental Decl.Ex. C. at 84–90). Lastly, White argues that Toro has failed to present any competent evidence showing that White's lower prices or Toro's downturn is sales are the result of White's infringement of Toro's patent.

The court determines that Toro's fear of economic harm, including loss of goodwill and reputation, does not constitute irreparable harm supporting a preliminary injunction motion.

> [N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial.

*Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed.Cir.1991). (citation omitted). Acceptance of Toro's position "would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances." *Illinois Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 683 (Fed Cir.1990). Moreover, Toro is not likely to suffer eventual economic harm in the event it ultimately succeeds because White is a financially responsible company that could satisfy any money damages that Toro might be awarded. *Nutrition 21*, 930 F.2d at 871 (no finding of irreparable harm because alleged infringer is a financially responsible company answerable in damages); *see also T.J. Smith and Nephew Ltd. v. Consolidated Medical Equip., Inc.*, 821 F.2d 646, 648 (Fed.Cir.1987).

In this case, Toro has shown no connection between White's current infringing products and its claim of irreparable harm. Toro's arguments are nothing more than argument without an adequate supporting record. The court finds that White has successfully rebutted the presumption of irreparable harm to Toro. Accordingly, the court concludes the second *Dataphase* factor, the irreparable harm to Toro should the court deny its motion, weighs in favor of denying Toro's motion for a preliminary injunction.[9]

## CONCLUSION

The court concludes that White's latest vacuum-blowers literally infringe claim 16 of the '528 patent. Although Toro has demonstrated a likelihood of success on the merits, its failure to demonstrate a threat of irreparable harm is dispositive on the issue of its request for a preliminary injunction. *See Reebok*, 32 F.3d at 1555. Therefore, **IT IS HEREBY ORDERED** that Toro's motion for a preliminary injunction is denied.

---

**8.** Toro also states in its moving papers that the benefit the '528 patent provides, which is valued by customers, is increased vacuuming performance not blower velocity. *See* (Pl.Mem. at 5); (Pl.Supplemental Mem. at 4–5).

**9.** The court did not consider either the affidavit of David K. Tellekson (dated February 8, 1996) and the Second Supplemental Affidavit of David S. Sipiora (dated February 14, 1996) in deciding this motion.