TRAVELERS EXPRESS COMPANY,
INC., a Minnesota corporation,
Plaintiff,

v.

TRANSACTION TRACKING TECH-
NOLOGIES, INC, a Tennessee
corporation, Defendant.

No. CIV.A.03–2848DSD/JGL.

United States District Court,
D. Minnesota.

Nov. 7, 2003.

Sara A. Poulos, Cole M. Fauver, Sonya C. Skogerboe, and Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for plaintiff.

David P. Pearson, Charles J. Schoenwetter, Winthrop & Weinstine, Minneapolis, MN, Michael J. Powell, Baker, Donelson, Bearman, Caldwell & Berkowitz, Atlanta, GA, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court upon plaintiff's motion for preliminary injunction. Based on a review of the file, record, and proceedings herein, the motion is denied.

## BACKGROUND

Plaintiff, Travelers Express ("Travelers"), issues and processes money orders. It holds several patents on its money order dispensers. Defendant, Transaction Tracking Technologies, Inc. ("3T") is a software development company employing fourteen people. Its Secure Laser Print Module System ("LPS") can be used to print money orders and other documents.

Travelers and 3T have had business contacts with one another since 1995, when Travelers contacted 3T to discuss "mutually beneficial business opportunities." (Klein Aff. Ex. A.) After these discussions, and again in 1997, the two companies entered into confidentiality agreements. Under these agreements, Travelers requested and received information regarding 3T's technology and business. (Klein Aff. ¶¶ 4, 5, 7–11.) In January 1998, Travelers' chief legal counsel sent 3T copies of patents it holds on money order dispensers. The correspondence in the record did not contain an explicit threat to sue or accusation of infringement, but simply copies of the patents. (Klein Aff. Ex. L.) 3T advised Travelers that it did not believe its products infringed any of Traveler's patents. Travelers took no further action at that time. The companies had indirect contact with one another again in 2002 and 2003, when Travelers agreed to supply information to enable two banks to print checks on Travelers' check stock using 3T's equipment. (Pl.'s Reply Memo. Supp. Mot. Prelim. Inj. at 9.)

Travelers now alleges that 3T is infringing its patents on money order dispensers. The patents in suit are U.S. Patent Nos. 4,870,596 ("the '596 patent") and 5,678,937 ("the '937 patent"). Travelers accuses 3T of infringing claim 1 of the '596 patent and claims 1 and 2 of the '937 patent and moves for a preliminary injunction.

## DISCUSSION

▋ In determining whether a preliminary injunction is proper, the court must consider the four *Dataphase* factors: the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of hardships, and whether an injunction would serve the public interest. *See Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 112–114 (8th Cir.1981). *See also Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338–39 (Fed.Cir.2003); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

▋ As in other contexts, a preliminary injunction in a patent case is an extraordinary remedy that is not to be granted as a matter of course. *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed.Cir.1993) (citation omitted). The court has "broad discretion when ruling on requests for preliminary injunctions." *United Indus., Corp.*, 140 F.3d at 1179.

## I. Likelihood of Success

▋ To succeed on its motion for preliminary injunction, plaintiff does not need to show a likelihood of success "beyond doubt" but rather a reasonable likelihood of success on the merits. *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 n. 5 (Fed.Cir.1992). Likelihood of success is a critical factor because the court cannot grant a preliminary injunction without it. *See Amazon.com,*

*Inc., v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed.Cir.2001). However, if the court finds it is reasonably likely that the moving party will succeed on the merits, it must still consider the other three factors. *See Eli Lilly & Co. v. American Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed.Cir.1996). To succeed on the merits, plaintiff must demonstrate that it has a valid patent and that it is being infringed by defendant. *See Vehicular Tech. Corp. v. Titan Wheel Intern., Inc.*, 141 F.3d 1084, 1088 (Fed.Cir.1998).

## A. Validity of the Patents in Suit

Under 35 U.S.C. § 282, an issued patent is presumed valid. Since 3T does not challenge the validity of the patents in suit, the court assumes, for purposes of the present motion only, that the '596 and '397 patents are valid.

## B. Infringement

 In analyzing whether an accused device infringes on a patent, the court must first construe the patent claims. *See Markman v. Westview Instr., Inc.*, 517 U.S. 370, 384, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The court then determines whether the accused device falls within the scope of the claims. *See id.* A device must embody all of the limitations of at least one claim to infringe the patent. *See High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed.Cir.1995). The court will consider the literal language of the claims, the patent specification and the prosecution history when construing the patent claims. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir.1996); *see also Augustine Medical, Inc. v. Gaymar Industries, Inc.*, 181 F.3d 1291 (Fed.Cir.1999) (holding that court may properly consider prosecution history of patents in suit as well as of parent or related applications). If a patent applicant narrows the scope of a claim in order to obtain a patent, he is presumed to have foregone the excluded subject matter. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 122 S.Ct. 1831, 1840, 152 L.Ed.2d 944 (2002).

Upon initial review, it is not clear that 3T's money order dispensers embody all the elements of the claims allegedly infringed. Without complete claim construction, the court is unable to conclude that the multiple security codes used by 3T embody all the elements of the contested patent claims.

### 1. Travelers' Claims

 The '596 and '397 patents describe an apparatus capable of dispensing money orders or documents having monetary value at a retail establishment. The patents claim "first and second security codes," the first allowing entry of control data (such as the maximum amount of a money order, fee rates, etc.) and the second allowing the money order to be printed. (Pl.'s Memo. Supp. Mot. Prelim. Inj. at 12; Fauver Aff. Ex. 1, col. 63 [hereinafter "'596 Patent"]; Fauver Aff. Ex. 2, col. 11 [hereinafter "'937 Patent"].) Travelers asserts that the multiple levels of security codes claimed in its patents are simply "codes entered by the user on the keyboard." (Pl.'s Reply Memo. Supp. Mot. Prelim. Inj. at 6.) The prosecution history of the '596 and '397 patents must be reviewed to determine whether the broad construction asserted by Travelers is proper.

Both patents began with application Ser. No. 06/596,291 ("the '291 application") filed on April 3, 1984. ('596 Patent, col. 1; '937 Patent, col. 1.) On April 4, 1985, amendments describing a "security inhibit printing code" were added to make the invention patentable over the Foudos invention (U.S. Patent No. 4,053,735) for a comput-

er-based check dispenser. (Powell Aff. Ex. E at 94, 99, 107–10 [hereinafter "FH '275"].) The remarks appended to the amendment explain that, while Foudos taught a conventional personal identification number ("PIN"), the '291 application disclosed a "security" feature initially stored in memory which must be detected before the printer can function. (*Id.* at 107–10.) Following the amendment, the patent examiner allowed the claims and the '275 patent was granted on May 20, 1986. (*Id.* at 136.)

In the prosecution of the '596 patent, Travelers initially submitted most of the language from Claim 11 of the '275 patent, but eliminated all language dealing with the security of the system. (FH '596 at 97.) The patent examiner rejected the claims, stating that Foudos provided a security code and that "[t]he provision of more than one security code is a matter of obvious design choice at least in the manner broadly claimed by applicant." (*Id.* at 101.) After the application was amended to describe Travelers' system as a remote computer coupled with a dispenser located at a retail establishment via a communications link, the claims were allowed and the '596 patent was granted on January 19, 1989. (*Id.* at 108–110, 121.)

The patent examiner explicitly stated that multiple PINs were obvious in light of Foudos, requiring Travelers to further limit its claim before the '596 patent was granted. Because Travelers was required to narrow its claims with respect to the multiple security codes, the court does not adopt Travelers' "plain language" argument for an expansive interpretation of "first and second security codes" at this stage.

### 2. 3T's Device

3T's software for issuing money orders is capable of up to nine different access levels corresponding to nine different security codes. 3T uses laser printers with conventional driver software that do not store any codes capable of inhibiting printing when the code is not recognized. (Kovac Aff. ¶ 39.) The security codes are manually entered user identifications and passwords. (*Id.* ¶ 40.) As such, they appear to embody the conventional PIN taught by Foudos.

The court finds the allegations of infringement questionable. More thorough construction of the claims regarding "first and second security codes" is required to determine whether 3T's products infringe the patents in suit. Because Travelers has not shown a likelihood of success on the merits, preliminary injunctive relief is not appropriate.[1] Moreover, the court finds that Travelers fails to meet its burden under the other *Dataphase* factors as well.

## II. Irreparable Harm

■ Irreparable harm is presumed only when both validity and infringement have been *clearly* established." *Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 1271 (Fed.Cir.1985) (quoting *Smith Int'l v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir.1983) (emphasis in original)). Because Travelers has not clearly established infringement, it is not entitled to a presumption of irreparable harm.

■ In some circumstances, a finding of irreparable harm may be based on a loss of market share or loss of long-term customers resulting from the alleged in-

---

1. 3T also argues that Travelers is not likely to succeed because it is estopped from enforcing its patents against 3T by the parties' prior business relationship. Because Travelers has not shown the requisite likelihood of success on the merits, the court need not address 3T's estoppel argument.

fringer's activities. *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. d. C.V.*, 240 F.Supp.2d 963, 979 (S.D.Iowa 2003); *Tate Access Floors v. Interface Architectural Resources, Inc.*, 132 F.Supp.2d 365, 378 (D.Md.2001), aff'd 279 F.3d 1357 (Fed.Cir.2002). In determining whether such harm is irreparable, courts consider the actual value of such losses. *See Kemin Foods*, 240 F.Supp.2d at 979. Mere fear of economic harm will not justify injunctive relief; plaintiff must make a showing of actual, substantial harm resulting from the alleged infringement. *See Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed.Cir.1991) (stating that "speculation that such [market share] losses might occur" is insufficient to justify preliminary injunction); *Toro Co. v. White Consol. Indus., Inc.*, 920 F.Supp. 1008, 1020 (D.Minn.1996) (presumption of irreparable harm rebutted if plaintiff fails to show connection between allegedly infringing product and downturn in sales). Nor does difficulty in calculating damages because of price erosion constitute irreparable harm. *See 3M Innovative Properties Co. v. Avery Dennison Corp.*, 185 F.Supp.2d 1031, 1042 (D.Minn.2002) (permanent reduction in price due to alleged infringer's activity is not irreparable harm because it can be remedied through monetary damages).

▮ Travelers has not demonstrated a loss in market share as a result of 3T's allegedly infringing money order dispensers. On the contrary, it has enjoyed a period of rapid growth since at least 1998, after 3T began competing with it in the money order business. (Keith Aff. Ex. A at 11.) Travelers points to only one con-

tract it has lost to 3T. (Doelling Aff. ¶¶ 7–9.) Should 3T's product eventually be found to infringe, calculation of monetary damages from lost contracts and price erosion would be possible. (Def.'s Memo. Opp. Mot. Prelim. Inj. at 32–33.) Therefore, the court finds that Travelers has not demonstrated irreparable harm.[2]

### III. Balance of Hardships

▮ The balance of hardships in this case weighs in favor of 3T. 3T is a privately held company with fourteen employees. Travelers is a nationwide leader in the money order industry. Travelers controls approximately thirty-eight percent of the market share, while 3T controls less than one percent. (Keith Aff. ¶ 5, Ex. A.) Further, preliminary injunctive relief would prevent 3T from selling any of its products, effectively putting 3T out of business. (*Id.* ¶ 6.)

Travelers argues that "small parties have no special right to infringe patents." *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir.1997). However, the *Bell* court also pointed out that the possibility that a small party would be put out of business by an injunction is a proper factor in weighing the relative hardship to the parties. *See id.* at 708.

### IV. Public Interest

The court finds the question of the public interest is indeterminate at the present stage. 3T asserts that Travelers profits primarily from interest on money in transition held by Travelers and from money

2. Each party contends that the April, 2004 expiration date of the patents supports their respective position. The court does not find that the limited remaining life of the patents favors either side. While patent rights do not "peter out" near the end of the term, the need for injunctive relief does not increase as expiration approaches. *See Woodard v. Sage Products, Inc.*, 818 F.2d 841, 854 (Fed.Cir.1987) (quoting *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1234 (Fed.Cir.1985)).

orders that are purchased but never redeemed, rather than from any service that actually benefit the public. (Def.'s Mem. in Opp'n to Pl.'s Mot. for Prelim. Inj. at 34.) 3T claims that its competing product gives retailers an alternative, which serves the public interest. Travelers denies that it keeps any abandoned property improperly and accuses 3T of unfair competition. (Pl.'s Reply Memo. Supp. Mot. Prelim. Inj. at 13.) It is not clear that the public interest is better served by either granting or denying the motion.

## CONCLUSION

Plaintiff has failed to demonstrate that it is reasonably likely to succeed in the underlying litigation, that the denial of preliminary injunctive relief will cause it to suffer irreparable harm or greater hardship than would befall defendant if such relief is granted, or that the public interest favors the issuance of the injunction. Therefore, **IT IS HEREBY ORDERED** that plaintiff's motion for preliminary injunction [Doc. No. 6] is denied.