STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 68-5-13 Vtec |
|---|---|
| Agency of Natural Resources,<br>      Petitioner<br><br>v.<br><br>Daniel Foss,<br>Angela Yaratz,<br>      Respondents | DECISION ON THE MERITS |

For several years, the Vermont Agency of Natural Resources ("ANR" or "Agency") has sought to convince Daniel Foss and Angela Yaratz ("Respondents") to respect certain protected wetlands, comply with the terms of a wastewater and potable water supply permit, and repair a failed wastewater system on their property at 4162 Route 100 in the Town of Hyde Park, Vermont. When Respondents failed to comply with ANR's efforts to have them remedy their environmental violations, ANR served Respondents with an Administrative Order, dated April 10, 2013 ("the 2013 AO").

Respondents thereafter requested that this Court conduct an evidentiary hearing on the 2013 AO. Respondents waived their right to an expedited evidentiary hearing under 10 V.S.A. § 8012(c) so that they could complete certain discovery and settlement negotiations with ANR.

ANR is represented in this proceeding by its staff attorney, John S. Zaikowski, Esq.; Respondents were assisted by their attorney, Brice C. Simon, Esq. No other party appeared in these proceedings.

When the parties were unable, despite their best efforts, to resolve all of their legal disputes through negotiation, the Court set this matter for a bench trial, which was conducted on January 7, 2014. Prior to the trial, the Court visited Respondents' property with the parties and their respective legal counsel. This site visit provided helpful context for the testimony and other evidence that was admitted at trial. After the trial was completed, the parties requested

an opportunity to submit post-trial memoranda. The Court granted this request, as well as Respondents' request for additional time to submit their post-trial memoranda.

Based upon the testimony and other evidence that was admitted at trial, including that which was put in to context by the Court's site visit, the Court does hereby render the following Findings of Fact, Conclusions of Law, and Judgment Order that accompanies this Merits Decision.

## Findings of Fact

1. Respondents Daniel Foss and Angela Yaratz own a 10.1±-acre parcel of land along Vermont Route 100 in the Town of Hyde Park, Vermont. Their property includes an existing home in which Respondents reside, located near the property's westerly boundary and accessed via a driveway from Route 100. Route 100 lies to the west of Respondents' property and runs in a general north/south direction in the vicinity of Respondents' property.

2. Respondents have owned and lived on their property in excess of twenty years.

3. Respondents' property is bordered on the north by a private roadway known as "Raymond Lane." Respondent Foss acknowledged that Respondents initially had no legal authority to use Raymond Lane for access to any portion of their property.

4. Respondents' property and their neighbors' properties are delineated on a copy of the Town of Hyde Park tax map.[1]

5. A good portion of Respondents' property, particularly the easterly portions, hosts or is adjacent to a Class II wetland. Other wet areas on Respondents' property were credibly identified as Class III wetlands.

6. Sometime before or during 2005, ANR investigated a claim that Respondents' neighbors were impacting a significant wetland on that neighbor's property. As a consequence of this investigation, ANR required that the neighbor hire a wetlands expert to identify, classify, and map the wetlands on the neighbor's property. That expert identified the wetland on the neighbor's property as a Class II wetland.

---

[1] We have attached to this Decision a copy of the Town of Hyde Park tax map, admitted as Exhibit 4, for the readers' reference; we are not certain that it is drawn to scale.

2

7.      The neighbor's wetlands expert identified the Class II wetland as extending over the neighbor's property and up to the boundary shared with Respondents' property. The expert did not map that portion of the Class II wetland that extended on to Respondents' property.

8.      Respondents knew of the wetland delineation activities on their neighbors' property. Although it is unclear how involved Respondents were in this wetlands complaint or investigation, Respondent Foss did discuss the investigation of his neighbor's wetlands with ANR officials. In fact, when ANR officials advised that they would be visiting Respondents' and their neighbors' properties, Respondent Foss advised that the ANR officials "best wear rubber boots."

9.      Much of the rear portion of Respondents' property is wet and contains standing water, wet soils, and vegetation evidencing the presence of a wetland, particularly the areas easterly and southeasterly from their home. Some of the wet areas on Respondents' property are adjacent to their neighbor's property that was delineated as a Class II wetland.

10.     The northerly portions of the wetlands on Respondents' property are a continuation of the Class II wetland on their neighbors' property. The remaining wetlands on Respondents' property are adjacent to the Class II wetlands that occupy both their and their neighbor's property.

11.     Some of the wetlands on Respondents' property are identified on the Vermont Significant Wetland Inventory ("VSWI") maps. Their identification on the VSWI maps provides further evidence that these wetlands on Respondents' property are Class II wetlands.

12.     Respondents sought to install a mobile home on their property for Respondent Foss's adult son, Daniel Foss, Jr., to use as his residence. They chose to install this mobile home on the rear (northeasterly) portion of their property, where the Class II wetlands, the buffer to those wetlands, and the adjacent Class III wetlands are located.

13.     In order to install the mobile home, Respondent Foss and his son, with the help of others, brought earthen fill on to the property and deposited it in the Class II wetlands and the buffer area. They also excavated the area in the hopes of draining the wetland.

14.     Sometime in the late fall of 2009, ANR received a complaint that Respondents were filling in the wetlands on their property. ANR officials promptly contacted Respondents and

3

visited their property. ANR officials determined that Respondents were filling a significant wetland without having applied for permission to do so. ANR officials made multiple attempts to speak with Respondents about the need to bring their property into compliance with the Vermont Wetland Rules ("VWR"), but Respondents chose not to respond to the initial attempts by ANR officials to speak with them.

15. On or about December 28, 2009, ANR officials wrote to Respondents to advise them of their wetlands encroachment concerns and to request that Respondents meet with them to discuss possible remedial measures. Respondents eventually replied by way of a letter ANR received on February 23, 2010, but Respondents' letter was not responsive to the ANR officials' requests.

16. Around this time, Respondents applied for a wastewater system and potable water supply permit for their property. Their application was presented by a septic system designer that Respondents hired. The proposed location for the on-site wastewater treatment system <u>was not</u> within the identified Class II wetlands or buffer on Respondents' property. Respondents were required to install a mound-type leach field for their treatment system because the water table in the area was so close to the ground surface. It was later determined that the wastewater system as installed did encroach in to the Class II wetlands and the wetlands buffer.

17. An Assistant Regional Engineer in ANR's Wastewater Management Division met with Respondents' designer, reviewed their proposed plans, and recommended that their plans be approved as proposed. The Assistant Regional Engineer issued Wastewater System and Potable Water Supply Permit #WW-5-5362 ("the WW Permit") on December 10, 2009. A copy of the WW Permit was admitted at trial as Exhibit 5.

18. The WW Permit listed several conditions that Respondents were required to follow prior to the use of the wastewater system and its connection to a residence.[2] These permit conditions included that (1) the mound supporting the system and the system itself shall be

---

[2] The WW Permit states that the systems were proposed to support "a 2-bedroom single-family residence" on Respondents' property. Exhibit 5 at 1. There was some uncertainty at trial on whether this wastewater system was intended to serve Respondents' existing home, the new mobile home, or both. That uncertainty does not impact the findings of fact or legal conclusions in this merits decision.

constructed as designed (Conditions 3.4 and 3.6); (2) upon completion of construction, Respondents shall cause their designer to file a certification that the system was constructed as designed (Condition 3.5); (3) the distribution piping installed as a part of the waste disposal system shall be tested and shown to have consistent pressure rates, presumably to confirm the absence of leaks (Condition 3.7); and (4) Respondents shall cause a licensed designer to inspect the completed pump station and forced main for the installed waste system, and certify that they were installed in accordance with the WW Permit (Condition 3.8). Exhibit 5 at 3. The WW Permit directed that Respondents comply with conditions therein prior to occupying the home that the wastewater and water supply systems support. We hereinafter refer to these identified WW Permit conditions collectively as the "Permit Conditions."

19. Respondents failed to comply with Permit Conditions 3.4 through 3.8. In particular, Respondents:

    a. failed to grade the installed mound properly and failed to cover the mound with topsoil, as directed by the approved plans and WW Permit;

    b. failed to cause a licensed designer to inspect the installed system, complete the required testing, or have the designer submit the required certifications to the Assistant Regional Engineer; and

    c. allowed Daniel Foss, Jr. to occupy the mobile home that was supported by the permitted wastewater and water supply systems prior to satisfying all the Permit Conditions.

20. Respondents have allowed these violations of the Permit Conditions to continue for nearly four years. At the time of trial, Respondents had still failed to satisfy these Permit Conditions.

21. ANR officials continued to encourage Respondents to satisfy the Permit Conditions. When Respondents continued to refuse to address their permit violations, those ANR officials requested that the Chief Environmental Enforcement Officer, Sean McVeigh ("CEEO"), contact Respondents and seek to convince them to cure their environmental violations. The CEEO first visited Respondents' property on November 9, 2009 and was one of the first ANR officials to discuss the alleged violations with Respondents.

22. The CEEO again visited Respondents' property on January 22, 2010 and April 22, 2010. During the January 22 visit, the CEEO observed that Respondent Foss and his son had placed a

5

mobile home on top of the fill they had placed in the wetland and its buffer. The CEEO advised that the mobile home placement was considered an additional environmental violation and that they should contact the appropriate ANR official to determine how they could cure this violation.

23. Respondent Foss advised during the January 22 visit that his son was already using the mobile home as his residence.

24. When the CEEO returned to Respondents' property on April 22, the CEEO requested permission to enter their property and discuss the status of the alleged environmental violations. Respondent Foss refused the CEEO's request for permission to enter the property and responded to the CEEO by stating: "I'll see you in court."

25. In response to Respondents' refusal to allow ANR officials to enter their property, ANR sought an access order from the Vermont Superior Court. Superior Court Judge Dennis R. Pearson issued the requested Access Order ("Access Order") on April 30, 2010, pursuant to 10 V.S.A. § 8005(b)(1).

26. The CEEO delivered a copy of the Access Order to Respondents and accessed the property on May 3, 2010. During this visit, the CEEO (accompanied by several other ANR officials) confirmed that a Class II wetland was located on Respondents' property and that the fill and mobile home Respondents placed on their property encroached onto the Class II wetland, its buffer, and an adjacent Class III wetland.

27. During this site visit, the ANR officials took photos of the site. These photos show the encroachment into the wetlands and wetland buffers as well as ditching that Respondent Foss admitted excavating on the property in order to drain the wetlands. Respondents provided no evidence of a permit or other authority to conduct this work.

28. On May 17, 2010, the CEEO issued to Respondents a notice of alleged violations of the VWR and the Permit Conditions ("NOAV"). Respondents did not respond to the NOAV and provided no evidence at trial that they subsequently took measures to rectify the alleged environmental violations.

29. During a May 14, 2010 site visit, the ANR Assistant Regional Engineer observed that the wastewater system serving Respondents' existing residence had failed. He confirmed that this

6

system, which predated the WW Permit, had failed based on the observation of untreated effluent surfacing from the system and draining across open land. He also observed patches of dried untreated effluent in the vicinity of this breakout area. ANR officials determined that this surfacing effluent was untreated based on its dark color and septic smell.

30.     At trial, Respondents did not dispute that untreated effluent was surfacing from their existing wastewater system and that the system had failed. They provided no evidence at trial that they had remedied this septic system failure, had applied for a permit to do so, or had taken any steps to mitigate the serious risk to the health, safety, and welfare of the general public.

31.     During one of their site visits, ANR officials determined that Respondents and Daniel Foss, Jr. intended to access the mobile home by using the private roadway known as Raymond Lane, even though they had no lawful authority to do so.

32.     ANR officials therefore concluded that Respondents could not occupy or allow others to occupy a mobile home on the rear portion of their property while using Raymond Lane for access. Respondents could not access the rear portion of their property by using their existing driveway because it would require crossing over wetlands.

33.     Respondents subsequently advised ANR officials that they had secured permission to use Raymond Lane as an access way for the rear of their property. ANR officials thanked Respondents for this updated information and requested that they update ANR officials on Respondents' efforts to address the alleged environmental violations, including the VWR and Permit Conditions violations. ANR received no further update from Respondents on their efforts to address the environmental violations on their property.

34.     In response to Respondents' lack of contact and lack of efforts to address the noticed environmental violations, ANR prepared the 2013 Administrative Order ("AO") that is the subject of this environmental enforcement proceeding. ANR caused the AO to be served on Respondents and posted for public notice. ANR thereafter filed the AO with the Court on May 30, 2013. Respondents caused their attorney to file with the Court his appearance, request for hearing, and notice of waiver of their rights to an expedited hearing.

35.    ANR officials committed the following time in response to Respondents' environmental violations including violation of the Permit Conditions, as well as their refusal to address their violations.  Given the credible testimony concerning their efforts, it is likely that these ANR officials docketed even more time in response to these environmental violations, but we limit this finding to the specific amount and value of time to which each ANR official testified.

    a.  CEEO McVeigh: 47 hours at a value of $40.58/hour:        $1,907.26

    b.  Ecologist Morrison: 16 hours at a value of $38.29/hour:        $612.64

    c.  Enforcement Officer Smith: 12 hours at a value of $37.76/hour:  $453.12

    d.  Carl Fuller: 2 hours at a value of $26.54/hour:         $53.08

                        Total:        $3,026.10

### Conclusions of Law

Respondents do not appear to dispute the substantive legal question now before this Court: whether Respondents caused the environmental violations alleged in the 2010 NOAV and the 2013 AO.  In fact, they provided no testimony or other evidence to contradict ANR's assertions that they had failed and refused to remedy the environmental violations ANR presented.  Respondents' only challenge at trial was to ANR's assertion that their property contains a protected Class II wetland, its buffers, and other wetlands that are contiguous to the Class II wetlands, all of which are equally protected by the Vermont Wetland Rules.  Class I and Class II wetlands are mapped according to the National Wetlands Inventory maps and the Vermont Significant Wetland Inventory maps.  The VWR also include as Class II protected wetlands any wetlands contiguous to the mapped Class II wetlands unless a determination is made otherwise by ANR.  ANR v. Persons, No. 97-6-10 Vtec, slip op. at 7 (Vt. Super. Ct., Envtl. Div. Aug. 1. 2012), aff'd 2013 VT 46; Vermont Wetland Rules, Rule § 4.2(b), Code of Vt. Rules 16-5-103:4 (WL) (2002) (hereinafter "VWR").[3]

Section 6.3(b) of the VWR provides that any activity not specifically allowed in Class II wetlands or their buffers requires a conditional use determination, governed by Section 8 of the VWR, before the activity is undertaken.  Filling, dredging, and grading wetlands for the

---

[3] The Vermont Wetland Rules were amended effective on August 1, 2010.  Because the alleged violations occurred and NOAVs were issued prior to this effective date, the Court will apply the prior VWR, effective January 1, 2002. The presumption that wetlands contiguous to mapped Class II wetlands is located at § 4.6 of the 2010 Rules.  Code of Vt. Rules 16-5-103:4 (WL) (2010).

purpose of developing the property for a single-family residence and associated wastewater system is not an allowed activity. VWR § 6.2.

Given that Respondents presented no credible evidence to refute ANR's evidence (and because we found ANR's evidence credible), we conclude that Respondents' property hosts a Class II wetland, buffers to that wetland, and other wetlands that are contiguous to the Class II wetland. Respondents filled in portions of these wetlands and their buffers, ditched their lands to drain the wetlands, placed a mobile home on top of the filled wetlands, and allowed Daniel Foss, Jr. to occupy that mobile home prior to receiving all necessary ANR permits that would have authorized such use. Further, Respondents began the installation of the mobile home without first securing a permit for their proposed on-site wastewater treatment system. When they eventually applied for and received the WW Permit, they ignored the Permit Conditions, failed to install the system as directed by the permit, and failed to cause a licensed designer to file the certifications as required by Permit Conditions 3.4 through 3.8. Finally, Respondents continued to use the failed wastewater system that serves their home, causing untreated effluent to flow onto the ground and putting themselves and their neighbors at risk.

The Vermont Wastewater System and Potable Water Supply Rules ("WSPWSR") prohibit the operation or use of a failed wastewater system. WSPWSR, § 1-303(a)(10), Code of Vt. Rules 16-3-300:1-303 (WL) (2007). Respondents did not present any credible evidence refuting ANR's evidence that they continued to knowingly use and operate a failed wastewater system after ANR officials had notified them that the system had failed.

For all these reasons, we do hereby **AFFIRM** the legal determination contained in the 2013 AO that Respondents: (1) violated VWR §§ 6.3(b) and 8 by dredging, grading, placing fill, and placing a wastewater system in a Class II wetland and the fifty-foot buffer that surrounds the protected wetland without first receiving a permit or other authority to do so; (2) violated Permit Conditions 3.4 through 3.8; and (3) violated WSPWSR § 1-303(a)(10) by continuing to use a failed wastewater system.

When a respondent requests that this Court conduct a hearing on an administrative order, we are directed to hear the evidence anew and render our own determination of whether a violation has occurred. 10 V.S.A. § 8012(b). When, as here, we determine that the

noticed violations have occurred, we have the authority to affirm or modify the order. Id. We are also required to "review and determine anew the amount of a penalty" that should be assessed against the respondent "by applying the criteria set forth in [10 V.S.A. § 8010(b)–(c)]." 10 V.S.A. § 8012(b)(4). While our factual findings lead us to generally affirm the penalties and injunctive relief that the ANR Secretary announced in her 2013 AO, we provide some modifications to the penalties and injunctive relief pursuant to the guidelines established in 10 V.S.A. § 8010(b)(1)–(8).[4]

**Subsection (1)**: Under § 8010(b)(1), we consider "the degree of actual or potential impact on public health, safety, welfare and the environment . . . ." Wetlands serve several important functions, including the protection of adjoining lands from flood, and contribute to the underground aquifer that serves as a source of drinking water for Respondents, their neighbors, and the general public. Respondents disregarded ANR's identification of the protected wetlands on their property and even attempted to drain those wetlands, solely for their personal benefit and the benefit of Respondent Foss's son, Daniel Foss, Jr. By placing a residence and even part of their new wastewater system within the Class II wetlands and the buffers for those wetlands, Respondents destroyed the very type of wetlands that our state laws and regulations seek to protect.

Furthermore, Respondents allowed raw, untreated effluent to surface onto the ground and continued to use the failed septic system that was releasing the effluent. Respondents emphasize that their limited resources do not allow them to address these environmental concerns. While we appreciate Respondents' financial plight, we reject their assertion that the Court should therefore turn a blind eye to their environmental violations. Respondents offer no alternatives and suggest no mitigating steps that they would take to reduce the harm being caused by their environmental violations. With no alternatives suggested, we conclude that we must impose the injunctive relief ANR requests and, further, impose a partial fine of $6,000.00 for their disregard of the adverse impacts that they have caused.

---

[4] The version of 10 V.S.A. § 8010(b)(1)–(8) in effect at the time of Respondents' violations included a provision concerning a recapture of the economic benefit of the violation. However, because ANR has chosen not to seek such a recapture, the authority for which is now codified in 10 V.S.A. § 8010(c)(2), we do not consider the issue of recapture.

**Subsection (2)**: Under § 8010(b)(2), we consider "the presence of mitigating circumstances, including unreasonable delay by the secretary in seeking enforcement." As noted above, Respondents offered that their current financial situation does not allow them to rectify their environmental violations. They provided little detail, however, regarding such factors as their current equity interest (if any) in their property and the possible receipt of rental payments from the occupant of the second residence on their property. ANR officials reacted timely to Respondents, attempted to have them voluntarily bring their property into compliance, and did not act with unreasonable delay. Therefore, in light of Respondents' significant environmental violations and their years-long resistance to recognizing and rectifying those violations, we conclude that that there are not sufficient circumstances to mitigate the environmental harm that they have caused.

**Subsection (3)**: Under § 8010(b)(3), we consider "whether the respondent knew or had reason to know the violation existed." The credible evidence shows that Respondents knew or should have known of the presence of wetlands on their property, including significant Class II wetlands. Based on Respondents' prior knowledge of ANR's investigation of illegal wetland encroachment into protected wetlands on their neighbors' property, we conclude that Respondents knew of the wetland and its significance but nevertheless chose to pursue their personal development interests by filling and attempting to drain the wetland. For these reasons, we assess an additional penalty of $4,000.00.

**Subsection (4)**: Under § 8010(b)(4), we consider "the respondent's record of compliance." The record presented did not show that Respondents had previously violated wetland protection regulations, but it does reveal a multitude of violations over several years. For these actions, we impose an additional fine of $1,000.00.

**Subsection (5)**: This subsection has been repealed.

**Subsection (6)**: Under § 8010(b)(6), we consider "the deterrent effect of the penalty." In considering the importance of deterring Respondents from future violations, we note their continued denial of the importance of the wetlands on their property. We also aim to encourage Respondents to respect protected wetlands and their buffers. We therefore impose an additional penalty of $2,000.00, in the hope and expectation that this additional penalty will

11

be a deterrent to Respondents if and when they ever consider altering a protected wetland or disregarding wastewater permit conditions.

**Subsection (7)**: Under § 8010(b)(7), we consider "the state's actual costs of enforcement." The value of the time that all ANR officials committed to responding to Respondents' wetland violations and WW Permit Conditions violations, including prosecution of these violations, totals just over $3,026.00. We direct Respondents to reimburse these costs as an additional penalty for their violations.

**Subsection (8)**: Section 8010(b)(8) directs us to consider how long a respondent allowed or caused an environmental violation to continue. In the case before us, Respondents caused three significant environmental violations to continue for several years. In fact, Respondents had still refused to mitigate or take corrective measures for their environmental violations even up to and through the time of trial. We therefore impose an additional penalty of $2,000.00 for the time Respondents allowed these three substantive environmental violations to continue.

Our assessment here would be more significant, but, in lieu of an additional penalty, we **AFFIRM** all the injunctive remedies imposed by the ANR Secretary in her AO, subject to the updated deadlines noted below.

## Conclusion

For the reasons stated above, we conclude that Respondents Daniel Foss and Angela Yaratz committed the following three substantive environmental violations:

(1) violated VWR §§ 6.3(b) and 8 by dredging, grading, placing fill, and placing a mobile home within a Class II wetlands, its buffer, and other wetlands adjacent to it;

(2) violated multiple Conditions from their WW Permit; and

(3) violated WSPWSR § 1-303(a)(10) by continuing to use a failed wastewater system, particularly after it caused untreated effluent to breach surface soils.

We therefore **AFFIRM** the legal conclusions rendered by the ANR Secretary and detailed in the April 10, 2013 AO and do hereby modify the penalties and injunctive relief imposed by the ANR Secretary as follows:

A. Pay a penalty totaling **$18,026.00** no later than thirty (30) consecutive calendar days from the date of this Judgment Order. Payment shall be made payable to the Treasurer

12

of the State of Vermont and forwarded to the Administrative Assistant for the Compliance Enforcement Division, Agency of Natural Resources, 1 National Life Drive (Davis 2), Montpelier, VT  05602-3803.

B. No later than thirty (30) days from the date this Merits Decision and Judgment Order becomes final (i.e.: August 22, 2014 if no appeal is taken),[5] Respondents shall hire a wetland consultant to delineate the wetland and prepare a wetland remediation plan.

C. No later than ninety (90) days from the date this Merits Decision and Judgment Order becomes final, Respondents shall have the wetland consultant submit a remediation plan ("the Plan") to ANR for review and approval.  The Plan shall include, but is not limited to: a delineation of the wetland boundary and its 50-foot buffer zone throughout their entire property; a plan for removal of the mobile home, the mobile home's wastewater system, and its associated fill from the wetland; a plan for remediating all dredged and graded areas of the wetland and 50-foot buffer zone; and a planting plan.  If Respondents wish to leave the mobile home, its wastewater system, and its associated fill in place, Respondents shall, by the same deadline, submit a complete application for a wetland permit to keep the mobile home and its wastewater system in place.

D. In the event ANR rejects the Plan in whole or in part, Respondents shall have the consultant submit a revised Plan to the Agency, which addresses those aspects of the Plan that were rejected, for review and approval no later than seven (7) consecutive calendar days following the Agency's rejection.  In the event of additional rejections, Respondents shall submit any subsequent revisions for Agency approval within seven (7) consecutive calendar days following the rejection.

E. No later six (6) months from the date this Merits Decision and Judgment Order becomes final, Respondents shall remediate all wetland and 50-foot buffer zone areas in accordance with the approved Plan.

F. In the event Respondents submit a wetland permit application to keep the mobile home and its wastewater system in place, and ANR denies their application, Respondents shall remove the mobile home and its wastewater system no later than thirty (30) consecutive calendar days following that ANR denial.  All disturbed areas shall be seeded with wetland conservation mix and stabilized with straw mulch.

G. In the event Respondents apply for and obtain a wetland permit to keep the mobile home and its wastewater system in place, no later than sixty (60) days from receipt of that permit, Respondents shall complete all of the following:  sample and test the water supply system in accordance with WW Permit Condition 2.2 and submit the results; complete filling of the wastewater system in accordance with WW Permit Conditions 3.4 and 3.6; submit certification in accordance with WW Permit Condition 3.5; test the wastewater system distribution piping in accordance with Condition 3.7 and submit the results; inspect the effluent/raw sewage pump station and force main installation in accordance with WW Permit Condition 3.8 and submit the results; and cut all trees

---

[5]  All further deadlines in the following paragraphs shall be calculated in the same manner.

located at the tow of the wastewater system mound flush with the original grade.

H. Respondents shall monitor the wetland and its 50-foot buffer zone for any planting viability and invasive species, including but not limited to purple loosestrife and common reed (*Phragmites australis*), for a period of five years commencing with the 2015 growing season. Respondents shall submit a monitoring report no later than December 15th annually for the five year period. The monitoring reports shall include assessments of planting viability and detail whether growth of invasive species has occurred.

I. Respondents shall comply with ANR directives regarding the wetland and buffer zone remediation activities and management of invasive species.

J. Respondents shall not engage in or allow any activity in the Class II wetland or its 50-foot buffer zone, other than allowed uses as specified in the VWR, without first obtaining a permit from ANR.

K. In the event Respondents remove the mobile home from its current location, then Respondents shall not re-locate the mobile home on the property unless and until all applicable environmental permits are obtained, including but not limited to a wetland permit or wastewater system and potable water supply permit.

L. No later than thirty (30) days from the date this Merits Decision and Judgment Order becomes final, Respondents shall hire a licensed Class B designer or Vermont-registered professional engineer to assess the property and design a replacement wastewater disposal system for Respondents' residence that meets the requirements of the WSPWSR.

M. No later than ninety (90) days from the date this Merits Decision and Judgment Order becomes final, Respondents shall have their designer or engineer submit to the Drinking Water & Groundwater Protection Division for review and approval, an administratively complete permit application, applicable fee, and design plans for the construction of a replacement wastewater disposal system for their residence that meets the requirements of the WSPWSR.

N. In the event ANR rejects any permit application in whole or in part, Respondents shall have the designer or engineer submit a revised application to the Agency, which addresses those aspects of the application that were rejected, for review and approval no later than seven (7) consecutive calendar days following the Agency's rejection. In the event of additional rejections, Respondents shall submit any subsequent revisions for Agency approval within seven (7) consecutive calendar days following the rejection.

O. In the event a wastewater permit is issued for the construction of any new replacement system, Respondents shall complete construction of the replacement wastewater disposal system in accordance with the approved permit application, place the new system into operation, and abandon the existing system no later than thirty (30) consecutive calendar days following approval of the permit application.

P. In the event Respondents vacate the property, then the property shall not be re-occupied by any person unless the property is brought into compliance with the WSPWSR through installation of an approved wastewater system.

14

Q. Respondents shall promptly respond to the directives and requests for information of Agency personnel regarding the evaluation of the property and any permit applications within the timelines specified.

R. The injunctive provisions of this Merits Decision and Judgment Order shall run with the land and be binding upon all of Respondents' heirs, successors, and assigns. ANR shall cause a certified copy of the Judgment Order to be recorded in the Town of Hyde Park Land Records.

### Rights of Appeal (10 V.S.A. § 8012(c)(4)–(c)(5))

**WARNING:** This Decision and the accompanying Judgment Order will become final if no appeal is requested within 10 days of the date this Decision is received. All parties to this proceeding have a right to appeal this Decision and Judgment Order. The procedures for requesting an appeal are found in the Vermont Rules of Appellate Procedure (V.R.A.P.) subject to superseding provisions in Vermont Rule for Environmental Court Proceedings (V.R.E.C.P.) 4(d)(6). Within 10 days of the receipt of this Order, any party seeking to file an appeal must file the notice of appeal with the Clerk of the Environmental Division of the Vermont Superior Court, together with the applicable filing fee. Questions may be addressed to the Clerk of the Vermont Supreme Court, 111 State Street, Montpelier, VT 05609-0801, (802) 828-3276. An appeal to the Supreme Court operates as a stay of payment of a penalty, but does not stay any other aspect of an order issued by this Court. 10 V.S.A. § 8013(d). A party may petition the Supreme Court for a stay under the provisions of the Vermont Rules of Civil Procedure (V.R.C.P.) 62 and V.R.A.P. 8.

A Judgment Order accompanies this Decision. This concludes the current proceedings before this Court.


Electronically signed at Newfane, Vermont on July 23, 2014, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division

15