2013 VT 46

# Agency of Natural Resources v. Timothy Persons and Trust A of Timothy Persons

[75 A.3d 582]

No. 12-274

Present: Reiber, C.J., Skoglund, Burgess and Robinson, JJ., and Bent, Supr. J., Specially Assigned

Opinion Filed June 28, 2013

*William H. Sorrell,* Attorney General, and *Kyle H. Landis-Marinello,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Paul S. Gillies* of *Tarrant, Gillies, Merriman & Richardson,* Montpelier, for Defendants-Appellants.

¶ 1. **Skoglund, J.** Defendants Timothy Persons and Trust A of Timothy Persons appeal from a Superior Court, Environmental Division decision that held certain construction and excavation work performed on defendants' property violated the Vermont Wetlands Protection and Water Resources Management laws and the Vermont Wetlands Rules (VWR). For a host of reasons, defendants contend they were not given adequate notice that portions of their lands contain a protected wetland, and therefore, they should not be subjected to the resulting fines. We affirm.

¶ 2. Defendant Timothy Persons or his relatives owned a 152-acre plot of farmland in Lunenburg, Vermont, with frontage along U.S. Route 2 and Hastings Road. In August 1998, the property was subdivided into seven individual parcels. Defendant Trust A of Timothy Persons (Trust A) purchased the property in April 1999 and began selling the subdivided lots. Defendant Trust A sold Lots 5 and 5A to Carl Jaborek, an individual not a party to this proceeding. Defendant Trust A retained ownership of Lot 4, with Allen Bacon acting as sole trustee.

¶ 3. Lots 4, 5, and 5A are the subject of this appeal. Lots 4 and 5A each contain 10.1 acres; Lot 5 contains 59 acres, including the property's original farmhouse. There is a Class II wetland located on Lot 4. As found by the environmental court, areas with wet soils extend from the Lot 4 wetland across Lots 5 and 5A, such that the wet soils abut the Class II wetland.

¶ 4. In September 1999, the Agency of Natural Resources (ANR) issued an Administrative Order against defendant Persons for unpermitted excavation work within a Class II wetland and its fifty-foot buffer on Lot 4. Defendant Persons initially contested the Order but later admitted to the 1999 wetland violation. He

subsequently entered into an Assurance of Discontinuance (AOD)[1] with ANR in 2001, wherein he admitted to the existence of the Class II wetlands on Lot 4, and that excavation work and the dumping of fill and gravel within the wetland and its buffer were violations of the applicable wetland-protection laws and regulations. Defendant Persons thereafter enrolled in classes pertaining to wetlands delineation and septic design.

¶ 5. Years later, Mr. Jaborek, owner of Lots 5 and 5A, learned of the Administrative Order against defendant Persons and contacted ANR's Waterbury office to inquire what excavation could lawfully be performed on his property in order to prepare his lots for sale. He also asked whether there were any outstanding requirements from the 2001 AOD that required attention. As a consequence, ANR officials visited Lots 4, 5, and 5A in May 2007 and confirmed that the wet soils located on the lots represented an additional wetland as evidenced by the surrounding vegetation, soil, and hydrology.

¶ 6. During the initial visit, ANR officials noted that defendant Persons recently cleared a swath of trees and excavated soils from a strip of land that cut across Lots 4, 5, and 5A to replace a damaged water line that supplied water to Lot 4. The area cleared was wholly contiguous to the Class II wetland on Lot 4. In June 2007, after receiving a report that defendant Persons was conducting further excavation work in the identified wetland, ANR conducted another site visit, which revealed that defendant Persons dug three additional spring-fed wells, approximately five feet deep in the secondary wetland. The wells were encapsulated in concrete tiles and extended three feet above ground level.

¶ 7. In July 2007, ANR issued a notice of violation, requiring that defendants remove the new tiles and gravel and make repairs to the cleared land by August 15, 2007. In September 2007, an ANR official and the State Wetlands Coordinator conducted another site visit, where they observed no change in conditions or attempt to ameliorate the cited violations; rather, they found that defendant Persons had installed electrical fixtures on the three new tile structures. In May 2010, ANR issued an Administrative Order against defendants for dredging and filling in a Class II

---

[1] Pursuant to 10 V.S.A. § 8007(a), the Secretary may accept from a respondent an assurance of discontinuance of a violation as an alternative to administrative or judicial proceedings.

wetland and its fifty-foot buffer zone without obtaining a conditional use determination pursuant to VWR §§ 6.3(b), 8.

¶ 8. Defendants appealed the Order to the environmental court. After a full hearing on the merits, the court concluded that defendants "knew or should have known that their activities were conducted within wetlands that are protected by 10 V.S.A., Chapter 37 and the VWR." Even though defendant Persons testified that the soils were not wet when he conducted the excavation work, the court did not find his testimony credible. Based on the credible evidence, including evidence of the existing plant, soil, and hydrology in the area in question, the court determined that a Class II wetland existed at the time defendants conducted their work and continues to exist today. As such, the court concluded that defendant Persons knowingly and defiantly excavated the land and installed wells without seeking the guidance of ANR or petitioning for a new wetlands determination. The court also found Allen Bacon, the sole trustee of Trust A, to be equally responsible, based on his knowledge of the area and the Trust's ownership interest. Accordingly, the court assessed a penalty of $14,222 against defendants pursuant to 10 V.S.A. § 8010(b)(1)-(8). This appeal followed.

¶ 9. We begin by setting forth the appropriate standard of review. The trial court's factual findings must be upheld unless clearly erroneous. *Town of Bethel v. Wellford*, 2009 VT 100, ¶ 5, 186 Vt. 612, 987 A.2d 956 (mem.). "Where the trial court has applied the proper legal standard, we will uphold its conclusions of law if reasonably supported by its findings." *Id.* (quotation omitted).

¶ 10. Defendants articulate thirteen objections to the trial court's findings. The thrust of their arguments focuses on whether they knew or should have known they were working within protected wetlands and whether the associated penalty is reasonable. Because of the significant overlap among defendants' claims, we address them thematically.

¶ 11. Defendants first contend they were not given adequate notice that they were working in protected wetlands, and any violation would be in contravention of basic due process. Specifically, they allege that ANR should have informed them of wetland boundaries during the initial site visits. Defendants also maintain that neither the 2001 AOD nor the National Wetlands Inventory

(NWI) maps sufficiently alerted them to other wetland areas located on the property. We disagree.

¶ 12. VWR[2] provides protection for significant wetlands, which include any Class I or Class II wetland and their associated buffer zones. Vermont Wetlands Rules §§ 2.24, 6.1, 6 Code of Vt. Rules 12 004 056. The rules require landowners to seek authorization from the Secretary of ANR before commencing any non-exempt activities, including clearing and excavating the land. See VWR §§ 6.3, 8.1, 6 Code of Vt. Rules 12 004 056; see also 10 V.S.A. § 913(a) ("[N]o person shall conduct or allow to be conducted an activity in a significant wetland or buffer zone of a significant wetland except in compliance with a permit, conditional use determination, or order issued by the secretary."). The rules provide further that all wetlands shown on the state's NWI maps and all wetlands contiguous to such mapped wetlands are presumed to be Class II wetlands. See VWR §§ 4.1, 4.2, 6 Code of Vt. Rules 12 004 056. Similarly, chapter 37 of Title 10, entitled Wetlands Protection and Water Resources Management, outlines the state's commitment to protect and regulate the water resources of the state through statute and sets forth similar guidelines in determining wetlands; chapter 201 of Title 10 outlines the enforcement action for wetland violations.

¶ 13. Pursuant to 10 V.S.A. § 8006, the Secretary of ANR may issue either a written warning or a written notice for an alleged violation, with a brief description of the violation and the intended course of action, as well as specific time lines and directives to achieve compliance, if appropriate. The rules do not require the Secretary to first issue a warning and then a notice as defendants contend. While it may have been good practice for ANR officials to orally notify defendants of the alleged violation during their first site visit in May 2007, such action was not required.[3]

¶ 14. Next, defendants argue that the 2001 AOD did not provide adequate notice that they were operating on protected wetlands, as the AOD addressed only a discrete portion of Lot 4, and failed

---

[2] Since the activities in question were conducted in 2007, the rules that were in effect from January 1, 2002 through July 31, 2010 control.

[3] Reginald Smith, an ANR environmental enforcement officer, testified that he attempted to call defendant Persons and Allen Bacon, trustee, to inform them of the alleged violation but was unable to reach them.

to indicate the existence of nearby wetlands. The record makes clear that the work in question, namely — excavation, dredging, gravel and other fill work, and the installation of the spring wells — took place outside the precise boundaries of what the AOD delineated as Class II wetlands. The trial court, however, did not presume that the AOD had provided defendants in 2001 with actual notice of all wetlands on their property. The court merely reasoned that, in light of defendants' prior exchanges with ANR officials, defendants knew agency officials could provide wetland boundary determinations on their land. Also, the court found that, because of the prior compliance matter, defendants knew or should have known that if they "intended to conduct excavation work or other activities and uses in an area protected by state wetland protection laws and regulations, [they] could only receive lawful authority to do so by requesting a conditional use determination." So, while the court used the 2001 AOD as contextual background, it did not find that the AOD provided defendants with a definitive ruling of the boundaries of all the existing wetlands.

¶ 15. Similarly, defendants allege that the NWI maps failed to accurately denote the secondary wetlands on their property. They argue the maps were difficult to read and required professional assistance or input to determine the boundary, as they were not "intended to show the exact location of wetland boundaries." We find this argument unavailing.

¶ 16. Even though the record indicates that NWI maps may not illustrate the precise boundary of each and every wetland in the state, they highlight protected areas, generally.[4] The onus is placed on the landowner to seek further clarification or petition for remapping. VWR § 7.1, 6 Code of Vt. Rules 12 004 056. In fact, the rules expressly state that "the maps denote the approximate location and configuration of significant wetlands. The actual boundaries . . . shall be determined in the field." VWR § 3.2(b), 6 Code of Vt. Rules 12 004 056. Furthermore, the trial court never declared that NWI maps would apprise defendants of wetlands. Instead, the court used the map as a counterpoint to illustrate that Class II wetlands extend beyond those marked on the map.

---

[4] As an extension, defendants argue that because the maps lack exactitude, a landowner cannot discern lands "contiguous" to an identified wetland, or a "buffer zone" — fifty feet from the designated wetland. For the same reasons we find defendants' argument regarding the maps unavailing, we also find this argument unpersuasive.

Class II wetlands are not limited to just those wetlands identified on the VSWI map. Rather, due to the metamorphic nature of surface and ground water, the classification of Class II wetlands also includes "all wetlands contiguous to such mapped wetlands, . . . unless determined otherwise by the [Water Resources] Board," pursuant to a successful petition for an alternative wetlands determination by ANR or a property owner. VWR § 4.2(b), 6 Code of Vt. Rules 12 004 056.

■ ¶ 17. In sum, defendants argue they were not afforded basic due process because they were never notified or able to learn the location of the wetlands before being charged by ANR for violating the law and regulations. Due process necessitates that there is "notice sufficient to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to. provide explicit standards for those who apply them." *Secretary, Agency of Natural Res. v. Irish*, 169 Vt. 407, 411, 738 A.2d 571, 575-76 (1999) (quotations omitted). The U.S. Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).

¶ 18. In particular, this Court in *Agency of Natural Resources v. Irish* found that NWI maps in conjunction with ANR's recommendations could provide a defendant with reasonable notice that it was necessary to procure a conditional use determination before commencing work. 169 Vt. at 413, 738 A.2d at 577. There, the Court reasoned that in light of the less demanding strictures in civil suits and the fact that the defendant knew there were significant wetlands on his property as marked by the NWI maps and that ANR recommended that he obtain an expert opinion and a conditional use determination prior to the excavation work, the defendant had ample notice he was working on protected land. *Id.* at 412-13, 738 A.2d at 576-77.

■ ¶ 19. Similarly, defendants here were well aware that significant wetlands were located on the property. While neither the AOD nor the NWI map detailed the precise locations of all secondary wetlands, the underlying facts suggest defendants knew or had reason to know they were performing work on protected wetlands, as evidenced by the fact that Lot 4 contains a Class II

wetland, the work was performed on Lot 4 and the abutting lands, and as the environmental court noted, credible evidence indicated that the surrounding soils were wet. Based on the totality of facts, defendants had sufficient reason to know that the excavation work was prohibited without a permit or a conditional use determination. At the very least, defendants should have sought the advice of ANR before commencing work. What is more telling is that defendants received the notice of the violation in July 2007, and they did not protest the violation or make reparations to the land until ANR sought a penalty for noncompliance in May 2010. Accordingly, we are satisfied there was no violation of defendants' due process rights.

¶ 20. Defendants next assert that the trial court erred in calculating the penalty. We disagree. "The imposition of civil penalties represents a discretionary ruling that will not be reversed if there is any reasonable basis for the ruling." *Id.* at 418, 738 A.2d at 580. Here, the court outlined its penalty assessment in accordance with 10 V.S.A. § 8010, the remedial statute designed "to enhance the protection of environmental and human health," "prevent the unfair economic advantage obtained by persons who operate in violation of environmental laws," "foster greater compliance with environmental laws, and deter repeated violation[s]." 10 V.S.A. § 8001; see also *Agency of Natural Res. v. Deso*, 2003 VT 36, ¶ 18, 175 Vt. 513, 824 A.2d 558 (mem.).

¶ 21. The court imposed a total penalty of $14,222. To encourage remediation, the court imposed a penalty of $3000. Because defendant Persons had knowledge of the significance of the wetlands and nonetheless pursued his own interests, it imposed a $3000 penalty. Defendant Persons' previous violations generated a $4000 fine. To deter future violations, the court assessed a penalty of $2000. The court incorporated ANR's expenditures of $1722 into the assessment. Lastly, the court fined defendants $500 for the amount of time they allowed the wetland encroachments to go unaddressed.

¶ 22. Defendants claim the trial court failed to account for mitigating factors when assessing the penalty. They suggest that their attempt to locate wetland maps and defendant Persons' enrollment in wetland classes was sufficient to eliminate any penalty assessment. They also maintain that ANR's failure to notify them that they were operating in wetlands should serve as a mitigating factor. We find defendants' arguments unavailing.

¶ 23. The fact that defendant Persons took a class on wetland delineation and made an effort to locate wetlands on environmental maps is not a mitigating factor here. As a landowner of protected wetlands, the onus is on him, individually, to ensure that he is conducting permissible activities in permitted areas. Also, ANR had no obligation to discuss the situation with defendants before issuing the violation. See 10 V.S.A. § 8006(b). Moreover, defendants had almost three years from receipt of the notice of violation before any penalties were assessed. In those three years, they could have challenged the ANR's findings pursuant to VWR § 7.1, 6 Code of Vt. Rules 12 004 056, or they could have complied with the Agency's order and performed the necessary repairs. The mitigating factors argued were insignificant. We find no error in the court's decision.

¶ 24. Additionally, defendants claim that the court improperly assessed the fines because there was no evidence of direct impacts on the wetlands. Section 8010(b)(1) of the remedial statute specifically informs the court to consider both actual and potential impacts of the environmental violation when calculating a penalty. While there were no demonstrable impacts to the wetlands evidenced at trial, the court factored that into its assessment. In fact, it declined to impose a more significant penalty because "actual impacts were not demonstrated by the evidence presented at trial." Because the court factored the actual impacts into its equation, we find its calculation reasonable.

¶ 25. Finally, defendants assert that the environmental court increased the penalty six fold based on a violation of the 2001 AOD. We find no facts to support this assertion. There was no dispute that the activities in question were beyond the scope of the AOD. The environmental court merely found that the AOD should have informed defendants that they were operating in areas contiguous to the previously identified wetlands on Lot 4. Further, the court provided calculated and well-founded reasoning for each and every penalty assessment under 10 V.S.A. § 8010. The record does not indicate that the environmental court increased any one penalty six fold on the basis of the AOD violation.

¶ 26. Finally, defendants allege that they were entitled to a jury trial. They concede they do not have a constitutional right to jury trial and fail to provide any rationale as to why this Court should expand its interpretation of the right to a jury trial in this

instance. See *State v. Irving Oil Corp.*, 2008 VT 42, ¶¶ 11, 15, 183 Vt. 386, 955 A.2d 1098 (looking beyond traditional analysis of whether claim had eighteenth century common law analogue and reasoning that civil penalty served remedial purpose and, as such, found that penalty was equitable in nature and defendant was not entitled to jury trial.). Accordingly, we do not address this issue.

*Affirmed.*