NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 30

No. 2017-187

| | |
|---|---|
| Agency of Natural Resources | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, |
| | Environmental Division |
| Francis Supeno, Barbara Supeno, and | |
| Barbara Ernst | January Term, 2018 |

Thomas G. Walsh, J.

Thomas J. Donovan, Jr., Attorney General, and Robert F. McDougall, Assistant Attorney
  General, Montpelier, for Petitioner-Appellee.

David Bond of Strouse & Bond, PLLC, Burlington, for Respondents-Appellants.


PRESENT: Reiber, C.J., Skoglund, Eaton and Carroll, JJ.


¶ 1. **SKOGLUND, J.** Respondents, Francis Supeno, Barbara Supeno, and Barbara Ernst, appeal an order of the Environmental Division imposing a penalty of $27,213 for water and wastewater permit violations. On appeal, respondents argue that their due process rights were violated, the penalty assessment was precluded by res judicata, and the amount of the penalty was excessive. We affirm.

¶ 2. The following facts are either not disputed or were found by the court. Respondents Francis Supeno and Barbara Supeno are siblings and jointly own property in Addison at 306 Fisher Point Road. Barbara Supeno and Barbara Ernst live adjacent to the property at 330 Fisher Point Road. In October 2009, the Supeno siblings obtained a wastewater system and potable water

supply permit, which authorized the replacement of a seasonal cottage at 306 Fisher Point Road with a year-round residence with one bedroom. The permit included the construction of an on-site well and wastewater disposal system. The water supply for 330 Fisher Point Road is provided through a public water system.

¶ 3.    In June 2014 the Agency of Natural Resources (ANR) received a complaint of an alleged violation of the wastewater permit. ANR also became aware that the property was advertised as a two-bedroom, two-bathroom rental. ANR sent an inquiry to respondents seeking to conduct an inspection of the property, but respondents did not reply. An ANR enforcement officer went to the property and Barbara Supeno denied ANR access to the house. The Environmental Division granted ANR's petition for an access order and ANR received access on September 9, 2014. During the visit, the ANR enforcement officer observed two water lines entering the basement of 306 Fisher Point Road. Respondent Ernst explained that one line was from the on-site well and the other was a spliced connection of the town water line from 330 Fisher Point Road, and that the house could switch between the two water sources. The enforcement officer also observed the permitted bedroom on the second floor and an additional nonpermitted bedroom in the basement.

¶ 4.    On September 18, 2014, ANR filed an emergency administrative order (EAO) and the court granted the petition the same day. The EAO listed three violations: (1) respondents failed to obtain a permit before modifying the rental home at 306 Fisher Point Road to add a second bedroom; (2) respondents spliced into the public water supply line serving 330 Fisher Point Road and connected it to the rental property on 306 Fisher Point Road without obtaining a permit; and (3) respondents created an unapproved cross-connection at the rental property, which allowed it to switch between the well water and the public water system and created a risk that potentially polluted water could contaminate the public water supply. The EAO stated that the Secretary of

2

ANR "reserve[d] the right to subsequently issue Administrative Orders, including penalties." The EAO also notified respondents of their right to request a prompt hearing on the merits of the order.

¶ 5. Respondents requested a hearing, which the Environmental Division held in September 2014. Respondents were represented at the hearing by counsel. In October 2014, the court modified the EAO to allow respondents to seek a permit from ANR to connect the building at 306 Fisher Point Road to the public water supply, but the violations remained unchanged. Respondents did not appeal the EAO.

¶ 6. In June 2015, ANR issued an Administrative Order (AO) for the same violations contained in the EAO and assessed a $29,325 penalty against respondents. Respondents requested a hearing on the penalty assessment in the AO before the Environmental Division.

¶ 7. The parties filed cross motions for summary judgment. Respondents alleged that penalties could not be assessed in the AO for three reasons: (1) the AO violated their due process rights because they were not informed of the possibility of such a high penalty being assessed; (2) the AO was barred by res judicata because it involved the same parties and issues as the EAO; and (3) the penalty violated the Eighth Amendment to the U.S. Constitution. ANR moved for summary judgment on the penalty assessment. The court concluded that respondents had received full process and res judicata did not apply and therefore denied respondents' motion for summary judgment. The court further concluded that review of the penalty assessment involved disputed facts and denied summary judgment to both parties on this issue. Following an evidentiary hearing, the court made findings relevant to the penalty assessment, which are discussed more fully below, and set the total penalty for the violations at $27,213. Respondents filed this appeal.

¶ 8. On appeal, respondents argue that assessing a penalty in the AO after the violations were established in the EAO was a denial of due process and barred by res judicata. They also contend that the penalty assessed by the court was excessive and in error.

3

## I. Due Process

¶ 9. Respondents first contend that assessment of a penalty in the context of the AO violates their right to procedural due process. Due process requires that a party be provided with notice " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " Town of Randolph v. Estate of White, 166 Vt. 280, 283, 693 A.2d 694, 696 (1997) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

¶ 10. Respondents allege that they were not properly noticed that a penalty might be assessed after conclusion of the EAO. To satisfy due process, an agency, prior to assessing a penalty, must inform the parties of "(1) the factual basis for the deprivation, (2) the action to be taken against them, and (3) the procedures available to challenge the action." Id. at 284, 693 A.2d at 696.

¶ 11. Here, respondents received full and proper notice of the proceedings that led to the penalty on appeal. The initial EAO provided all of the required elements of notice. It set forth the facts supporting the violations and cited the statutory basis for the violations. The EAO explained what action would be taken in response to the violations. The EAO specifically notified respondents that the Secretary of ANR "reserve[d] the right to subsequently issue Administrative Orders, including penalties." Finally, the EAO set forth respondents' right to a hearing on the merits of the order and instructions on how to pursue that avenue. Indeed, respondents availed themselves of the process accorded and requested a hearing before the Environmental Division. After the hearing, respondents were provided with a modified EAO that again specifically advised that penalties could be sought at a later time in a proceeding for an AO. The AO similarly provided the required notice to respondents.

¶ 12.   Respondents argue that ANR's action of seeking a penalty in the AO amounted to the imposition of an undisclosed remedy, which violates due process. Prue v. Royer, 2013 VT 12, ¶ 53, 193 Vt. 267, 67 A.3d 895 (explaining that "relief cannot be granted if the party against which it is granted was prevented from raising appropriate defenses or submitting evidence because it did not know that that remedy was being considered"). Given that respondents were fully noticed in the EAO proceeding that penalties could be assessed later, there is no merit to respondents' argument that deferring consideration of penalties to the AO deprived respondents of an opportunity to challenge the factual findings underlying the penalty. Respondents chose not to appeal the EAO having been fully noticed that these violations could form the basis for penalties in a subsequent AO proceeding. Because respondents were provided with appropriate notice, they were not denied due process.

## II.  Claim Preclusion

¶ 13.   Respondents next argue that the AO is barred by res judicata, also known as claim preclusion. "Under the doctrine of claim preclusion, a final judgment in previous litigation bars subsequent litigation if the parties, subject matter, and cause(s) of action in both matters are the same or substantially identical." Faulkner v. Caledonia Cty. Fair Ass'n, 2004 VT 123, ¶ 8, 178 Vt. 51, 869 A.2d 103. Respondents contend that having obtained a final judgment in the EAO proceeding, ANR could not then seek penalties in an AO because the AO involved the same parties, subject matter, and claims as those that were raised or might have been raised in the EAO.

¶ 14.   The Environmental Division concluded that claim preclusion did not apply because the EAO was not a final judgment as to the penalty. The court relied on the following language in the EAO that expressly reserved ANR's right to seek penalties in a subsequent AO proceeding: "The Secretary retains the right to subsequently issue Administrative Orders, including penalties, pursuant to 10 V.S.A. § 8008 with respect to violations described therein." The court further

5

concluded that not applying res judicata was consistent with the language of the applicable statutes, ANR's interpretation of those statutes, and the policy behind the statutes.

¶ 15. On appeal, we review de novo the question of whether claim preclusion applies to a given set of facts. Faulkner, 2004 VT 123, ¶ 5. Here, there is no dispute that the EAO and AO involved the same parties, subject matter, and causes of action insofar as both proceedings concerned ANR and respondents and involved the same factual violations. Further, although penalties were not sought in the context of the EO, they could have been. 10 V.S.A. § 8010(a) (allowing assessment of administrative penalty in context of administrative order or emergency administrative order); see Lamb v. Geovjian, 165 Vt. 375, 380, 683 A.2d 731, 734 (1996) (explaining that issue preclusion bars both claims that were actually litigated and claims "that were or should have been raised in previous litigation" (quotation omitted)).

¶ 16. Claim preclusion may be enforced, however, only when "there exists a final judgment in former litigation." In re Tariff Filing of Cent. Vt. Pub. Serv. Corp., 172 Vt. 14, 20, 769 A.2d 668, 673 (2001) (quotation omitted). Once there is a final judgment, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction." Restatement (Second) of Judgments § 24(1) (1982). The Restatement of Judgments states that a claim is not extinguished and a second action can be maintained if "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action." Id. § 26(1)(b). This exception to claim preclusion has been adopted by courts in other jurisdictions. See D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y., 112 F.3d 257, 260 (7th Cir. 1997) ("Under a generally accepted exception to the res judicata doctrine, a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action." (quotation omitted)); Toro Co. v. White Consol. Indus., Inc., 920 F. Supp. 1008, 1013 (D. Minn. 1996) ("In a consent judgment, a party may expressly reserve

6

the right to re-litigate some or all of the issues that would have otherwise been barred between the same parties."); see also 18 C. Wright et al., Federal Practice and Procedure § 4413 (3d ed.) ("A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion.").

¶ 17.   This Court has not previously explicitly adopted this exception to claim preclusion although some prior decisions have alluded to it.  In Carmichael v. Adirondack Bottled Gas Corp. of Vermont, 161 Vt. 200, 207, 635 A.2d 1211, 1216 (1993), this Court recognized and applied a similar exception to claim preclusion set forth in the Restatement § 26—that claim preclusion does not apply if the defendant acquiesced in splitting the claims.  See Restatement (Second) of Judgments § 26(1)(a) (providing that claim is not extinguished if "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein").  In Faulkner, 2004 VT 123, ¶ 16 n.5, this Court approvingly cited the Restatement for the proposition that reserved claims are not barred by claim preclusion although the Court concluded there had been no such reservation in that case.

¶ 18.   In determining whether to adopt this exception, we consider the purposes of claim preclusion: "(1) to conserve the resources of courts and litigants by protecting them against piecemeal or repetitive litigation; (2) to prevent vexatious litigation; (3) to promote the finality of judgments and encourage reliance on judicial decisions; and (4) to decrease the chances of inconsistent adjudication." Tariff Filing, 172 Vt. at 20, 769 A.2d at 673.  Providing an exception to claim preclusion for issues that have been reserved by the court is consistent with these purposes. Judicial resources are conserved by allowing the court to decide important, potentially more time-sensitive, issues while reserving other claims for later adjudication.  Finality and reliance are preserved insofar as all parties are on notice as to which claims have been extinguished and which

7

remain open for subsequent litigation. Moreover, the exception does not open the door to vexatious litigation or inconsistent outcomes. Therefore, we adopt an exception to claim preclusion for circumstances in which the court reserves the plaintiff's right to maintain a second action on a particular issue.[1]

¶ 19. The EAO in this case sufficiently reserved the issue of penalties to preclude application of claim preclusion. The EAO explicitly reserved ANR's right to seek penalties in a subsequent AO proceeding. Therefore, claim preclusion did not bar ANR from seeking penalties as part of an AO proceeding.

¶ 20. In support of their argument, respondents cite Harmon Industries, Inc. v. Browner, 19 F. Supp. 2d 988 (W.D. Mo. 1998), in which the court held that the Environmental Protection Agency (EPA) was barred from imposing a monetary penalty in a separate proceeding after the property owner had entered a consent decree with the state environmental agency for the same violation. Id. at 998. In that case, the consent decree specifically provided that it resolved all claims and constituted full satisfaction and there was no reservation to later adjudication of penalties by the EPA. Id. at 992. The fact that the EAO expressly reserved ANR's right to seek penalties in a subsequent AO proceeding distinguishes this case from Harmon.

¶ 21. Respondents also contend that the reservation was ineffective because the authorizing statute does not allow ANR to seek penalties in an AO proceeding after not including a penalty in the EAO. The statute states that a "penalty may be included in an administrative order . . . or in an emergency administrative order." 10 V.S.A. § 8010(a) (emphasis added). In construing this statute, "our primary objective is to effectuate the intent of the Legislature" and we

---

[1] We need not decide how explicit the reservation must be because the reservation in this case was specific and clear.

8

do so first by examining the plain language. C&S Wholesale Grocers, Inc. v. Dep't of Taxes, 2016 VT 77A, ¶ 13, 203 Vt. 183, 155 A.3d 169.

¶ 22. The statute's use of "or" indicates a legislative intent to allow inclusion of the penalty in either proceeding. The statute does not specifically require ANR to choose one proceeding over the other and is silent on the question of whether ANR can initiate penalties in an AO after choosing not to assess penalties in an EAO.

¶ 23. "[W]here a statute is silent or ambiguous regarding a particular matter this Court will defer to agency interpretation of a statute within its area of expertise as long as it represents a permissible construction of the statute." In re Hinsdale Farm, 2004 VT 72, ¶ 19, 177 Vt. 115, 858 A.2d 249 (quotation omitted). ANR's interpretation that an EAO can reserve the issue of penalties to an AO is reasonable. The EAO process in general is on an abbreviated timeline because the process is meant to address activities that might present an immediate concern for public health or the environment. Under the statute, an EAO may be sought when there is a threat to public health or the environment or there is ongoing action that will likely lead to such a threat, or when activity is occurring without a permit. 10 V.S.A. § 8009(a)(1)-(3). ANR's construction of the statute is permissible and it acted within the bounds of the statute by choosing to assess penalties in the AO rather than in the initial EAO.

### III. Penalty

¶ 24. Finally, respondents argue that the penalty assessed by the court was excessive and an abuse of discretion. ANR initially imposed a penalty of $29,325, and after respondents requested a hearing before the Environmental Division, the court "review[ed] and determine[d] anew the amount of [the] penalty." 10 V.S.A. § 8012(b)(4). The amount of an administrative penalty is determined by considering several statutory factors. 10 V.S.A. § 8010(b) (listing factors). These include the degree of actual or potential impact, the presence of mitigating

9

circumstances, respondent's knowledge of the violation, respondent's record of compliance, the deterrent effect, the costs of enforcement, and the duration of the violation. Id. "The imposition of civil penalties represents a discretionary ruling that will not be reversed if there is any reasonable basis for the ruling." Agency of Nat. Res. v. Persons, 2013 VT 46, ¶ 20, 194 Vt. 87, 75 A.3d 582 (quotation omitted).

¶ 25. The Environmental Division conducted an evidentiary hearing and made specific findings related to the penalty assessment. The court adopted ANR's practice of treating multiple violations of the same permit or related violations as one violation and calculated one overall penalty for respondents' three violations. The court used the system configured by ANR to determine an appropriate penalty. Under that scheme, a violation is first identified as Class I to IV, with Class I being the most severe, depending on several factors, including the harm caused, the severity of the violation, and whether the action was initiated without a permit. Each class has a monetary penalty range. The statutory factors are then given a number between "0" and "3" and those combined numbers are multiplied by the maximum penalty for that class to arrive at a base penalty. The penalty can be decreased for mitigating factors and increased to provide a deterrent. In addition, ANR may recoup economic benefit gained by the violator and the cost of enforcement.

¶ 26. Here, the court determined that these violations were Class II because they involved construction initiated before issuance of a permit. The court then considered the various statutory factors. The court found there was a moderate potential[2] for an adverse impact on health or the

_____

[2] As to the violations for adding a second bedroom and using the home as a rental property, the court found that there was a risk that the increased load on the wastewater treatment system would cause it to fail and could result in human exposure to contaminates or contamination of soil and groundwater. As to the violation for splicing the water supply, the court acknowledged that there was conflicting evidence. The court credited the testimony of ANR that although the cross connection was temporarily disconnected, it could have been reconnected. The court noted, however, that if there was just a cross connection violation it would assign a value of "0" to the degree of impact. On appeal, respondents assert that the court committed error in finding that the water supply could be switched back and forth from the well to the public supply. Respondents

environment and assigned that factor a "1." The court determined that respondents knew or should have known that their actions required a permit and assigned this factor a "2." Because the evidence showed that respondents had no record of noncompliance, the court gave this factor a "0." As to the length of the violation, the court found that the cross connection was in place from at least October 2009 to November 2011 and the increased load on the wastewater was in existence from July 2010 to September 2014 without a permit and assigned this factor a "3." The court looked at mitigating factors, which the statute identifies as "including unreasonable delay" by ANR and determined that no mitigation was warranted insofar as ANR acted promptly and any delay was caused by respondents' decision to require ANR to obtain a court order prior to gaining access to the property. The court increased the penalty by $9000 as a deterrent, finding that respondents were not cooperative with ANR and that the violations had existed for a long time. The court calculated the cost of enforcement as $6213. The court found that respondents' economic benefit could not be accurately calculated and did not increase the penalty on this basis. The court set the overall penalty at $27,213.

¶ 27. Respondents argue that the court clearly erred by including an increase for a deterrent because respondents did not cooperate with ANR initially and denied ANR access to the property at the time of the original site visit. Respondents contend that they should not be punished for asserting their constitutional rights to require a warrant before entry onto their property. We conclude that there was no error. The Environmental Division has discretion to determine how to apply each of the factors and "how any mitigating circumstances found should affect the amount of the penalty imposed as long as its assessment is not unreasonable." Agency of Nat. Res. v.

assert that the facts demonstrate that the evidence does not support this finding and that there was no threat to the public water supply. Even if the finding is not supported, there was no prejudice to respondents because the court explicitly stated that its assessment of the degree of impact was derived from the violation related to the increased load on the wastewater treatment system.

11

Godnick, 162 Vt. 588, 597, 652 A.2d 988, 994 (1994).  The court here did not penalize respondents for exercising their constitutional rights.  The court determined that a larger penalty was necessary to deter future violations because respondents had not cooperated with ANR and had allowed the violations to exist for an extended duration even though they knew or should have known of the violations.  Moreover, even excluding respondent's refusal to allow ANR entry to the property, the remaining facts provide a reasonable basis for the court's decision.  Persons, 2013 VT 46, ¶ 20 ("The imposition of civil penalties represents a discretionary ruling that will not be reversed if there is any reasonable basis for the ruling." (quotation omitted)).  The court's decision to assess a deterrent penalty is reasonable in light of the facts that respondents did not answer ANR's initial inquiry, did not cooperate with ANR's investigation, and allowed the violations to exist for a long time without a permit.

¶ 28.  Respondents argue that the court erred in assessing the penalty against Barbara Ernst because she is not an owner.  We do not reach this issue because respondents have failed to demonstrate how it was preserved for appeal.  See Agency of Nat. Res. v. Deso, 2003 VT 36, ¶ 12, 175 Vt. 513, 824 A.2d 558 (mem.) ("Since this claim was not raised before the environmental court, it is not preserved for our review.").  The violations were filed against all three respondents and at no time did they object to the inclusion of Barbara Ernst in the case or ask that she be removed as a respondent.  Having failed to raise this below, the issue is not preserved for appeal.

¶ 29.  Respondents make several other claims regarding the court's findings supporting the penalty assessment. They argue that the court failed to consider certain evidence demonstrating that the violations had no potential to cause harm, that the court erred in finding that respondents knew or should have known of the violations, and that the court erred in determining the length of the cross-connection violation.  "The trial court determines the credibility of witnesses and weighs the persuasive effect of evidence, and we will not disturb its findings unless, taking them in the

light most favorable to the prevailing party, they are clearly erroneous." In re JLD Properties of St. Albans, LLC, 2011 VT 87, ¶ 17, 190 Vt. 259, 30 A.3d 641 (quotation omitted). Although respondents view the evidence differently, the court based its findings on evidence in the record and provided a reasonable basis for its penalty assessment.

Affirmed.

FOR THE COURT:

_____
Associate Justice

13