*Kittredge v. State*, No. 565-10-19 Wncv (Tomasi, J., Aug. 3, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 565-10-19 Wncv |
| Lauren Kittredge,<br>      Plaintiff<br><br>v.<br><br>State of Vermont,<br>      Defendant | |

Opinion and Order on Appeal From the Department of Motor Vehicles

Petitioner Lauren Kittredge seeks review of the Vermont Department of Motor Vehicles' (DMV's) decision, following a hearing, to suspend her right to operate a motor vehicle. Vt. R. Civ. P. 74. Initially, DMV suspended her license for 15 days and, then, indefinitely. Ms. Kittridge requested a hearing concerning the suspension. After a hearing before an administrative hearing examiner, the officer affirmed the suspension concluding that the evidence supported the determination that Ms. Kittredge was "incompetent" to drive and that her past conduct showed that her continued operation posed a threat to the general public. 23 V.S.A. § 671(a). The Commissioner of DMV approved the examiner's ruling. Ms. Kittredge appealed that determination to this Court.

I.      Standard

Ms. Kittredge's appeal is on the record pursuant to Rule 74. *See* 23 V.S.A. § 105(b) ("A person aggrieved . . . may have such decision reviewed by the Superior

1

Court pursuant to Rule 74 of the Vermont Rules of Civil Procedure.").  The Vermont

Supreme Court has described the nature of Rule 74 review as follows:

> Courts presume that the actions of administrative agencies are correct, valid and reasonable, absent a clear and convincing showing to the contrary.  Therefore, judicial review of agency findings is ordinarily limited to whether, on the record developed before the agency, there is any reasonable basis for the finding.  Courts must remember that "(a)dministrative agencies belong to a different branch of government," and that "(t)hey are separately created and exercise executive power in administering legislative authority selectively delegated to them by statute."

*State Dep't of Taxes v. Tri-State Indus. Laundries, Inc.*, 138 Vt. 292, 294 (1980)

(citations omitted).

## II. Analysis

The legal framework for suspending a driver's license is found in 23 V.S.A. §

671(a).  It provides:

> In his or her discretion, the Commissioner may suspend indefinitely or for a definite time the license of an operator, or the right of an unlicensed person to operate a motor vehicle, after opportunity for a hearing upon not less than 15 days' notice, if the Commissioner has reason to believe that the holder thereof is a person who is incompetent to operate a motor vehicle or is operating improperly so as to endanger the public.

*Id.*[1]

The hearing examiner in this proceeding concluded that Ms. Kittredge's

license to operate should be suspended on both of the grounds listed above: he found

---

[1] Similarly, the Commissioner may refuse "to issue a license to any person whenever he or she is satisfied from information given him or her by credible persons, and upon investigation, that the person is mentally or physically unfit, or because of his or her habits, or record as to accidents or convictions, is unsafe to be trusted with the operation of motor vehicles."  23 V.S.A. § 603.

that she was both "incompetent to operate a motor vehicle" and had history of "improperly operating so as to endanger the public." *Id.* Those determinations were based on the examiner's determination that Ms. Kittredge had been charged with multiple instances of driving under the influence of alcohol but had not been convicted because she had been found "incompetent" to stand trial. In making those determinations, the examiner relied upon a letter submitted by the Washington County State's Attorney, a court document detailing Ms. Kittredge's criminal history, and the Information and sworn affidavits prepared by law enforcement in connection with the Washington County charges. There is no dispute that the Washington County charges were dismissed at the time of the hearing and that earlier charges from Rutland County remained pending.

On appeal, Ms. Kittredge maintains that it was improper for the examiner to rely on hearsay documents to make his ruling. She contends that such evidence is not of a type reasonably relied upon by persons in the context of their daily affairs. 23 V.S.A. § 810. She also asserts that admitting such evidence denied her due process because she was unable to "cross-examine" the drafters of the documents. Additionally, she argues that the Commissioner erred in relying on evidence of pending criminal cases in violation of 23 V.S.A. § 671(c) & (d). As to incompetency, she submits that the medical reports admitted below rebut any claim of incompetence. Lastly, she maintains that the Commissioner was required to order an examination of her, pursuant to 23 V.S.A. § 636, prior to seeking a suspension of her license.

The Commissioner disagrees on all fronts. She asserts that the evidentiary provisions of Section 810 do not apply to the proceedings involved in this case, that Ms. Kittredge was provided due process, that it was appropriate to rely on pending criminal matters under these circumstances, that the evidence submitted is sufficiently reliable and convincing to support the Commissioner's decision, and that the provisions of Section 636 are discretionary and do not limit the ability of the Commissioner to take affirmative action under Section 671 where warranted by the evidence.

The Court makes the following determinations.

First, the Court disagrees with Ms. Kittredge's contention that the Commissioner is required to proceed initially under the examination procedures of Section 636 anytime the Commissioner believes a driver is incompetent or poses a danger to the travelling public. The plain language of Section 636 is discretionary and optional. It indicates that the Commissioner "may" seek a "special examination" of a questionable driver, and, "If" the Commissioner does, it describes the types of examinations that may be required. Nothing in the language suggests that it is mandatory and nothing in Section 671 demands that a suspension determination must be made pursuant to an examination performed under Section 636.

The Court concludes that suspensions under Section 671 may proceed based on evidence obtained by the Commissioner without first requiring an examination under Section 636. That conclusion is supported by the language of the statute and

4

by the interpretation of the Commissioner who is charged with enforcement of the law. *See Agency of Nat. Res. v. Supeno*, 2018 VT 30, ¶ 23, 207 Vt. 108, 116–17 (if statute is ambiguous or silent, courts "will defer to agency interpretation of a statute within its area of expertise as long as it represents a permissible construction of the statute" (internal quotations omitted)).

Second, the Court agrees with the Commissioner that the Rules of Evidence are not applicable in these proceedings. 3 V.S.A. § 816(b) makes clear that hearings of the type involved in this action are not subject to the "contested case" evidentiary provisions set out in 3 V.S.A. § 810. *See* 23 V.S.A. § 105(a) (describing hearings before the Commissioner). Accordingly, the Commissioner could rely upon the documents submitted below.

Third, the Court disagrees with Ms. Kittredge that admitting evidence from the Washington County State's Attorney and of her criminal history records denied her due process because she could not cross-examine the sources. Due process requires notice and a meaningful opportunity to be heard. *See In re Miller*, 2009 VT 112, ¶ 9, 186 Vt. 505, 512. Ms. Kittredge had that here. She received notice of the hearing, was represented by counsel, had the opportunity to call witnesses if she wished, testified on her own behalf and had the chance to challenge the evidence through that testimony, and submitted her own medical evidence. No more is required to satisfy due process.

Fourth, Ms. Kittredge gets more traction with her objections to the Commissioner's reliance upon, at least, the criminal records from the Rutland

5

Superior Court. It is undisputed that those criminal proceedings remained pending at the time of the hearing. A review of the examiner's decision shows that he relied, in part, on those records in making his assessment both as to incompetence and dangerousness.[2] Section 671(c), however, states:

> The Commissioner shall not suspend the license of an operator, or the right of an unlicensed person to operate a motor vehicle, while a prosecution for an offense under this title is pending against such person, unless he or she finds upon full reports submitted to him or her by an enforcement officer or motor vehicle inspector that the safety of the public will be imperiled by permitting such operator or such unlicensed person to operate a motor vehicle, or that such person is seeking to delay the prosecution, but if he or she so finds, he or she may suspend such license or right pending a final disposition of the prosecution.

23 V.S.A. § 671(c).

While the examiner may have been able to make the predicate findings needed for admission under Section 671(c), that provision was not expressly discussed in the decision below. As a result, the examiner did not make the specific findings necessary to support admission of the Rutland Superior Court records under that law.

Additionally, though given brief discussion on appeal by both sides, neither the examiner's decision nor the parties' briefs fully address how to interpret Section 671(d) or its relationship to Section 671(c). Section 671(d) provides that: "The Commissioner shall not suspend the license of an operator, or the right of an unlicensed person to operate a motor vehicle, for any cause which has constituted

---

[2] The Court agrees with the Commissioner that either statutory ground alone would be sufficient support suspension.

the subject matter of a prosecution in which the conviction of such person has not been obtained." *Id*. § 671(c). While the Court could imagine a number of possible interpretations of that provision, those options have not been developed or explored in this record. Indeed, one interpretation of the provision might bar consideration of any pending or dismissed criminal actions.

Given the Commissioner's reliance on the Rutland materials but the lack of findings consistent with Section 671(c), the Court cannot determine whether the Commissioner would have made such findings or, if not, whether her decision would have been the same without such evidence. Nor can the Court determine, without an initial interpretive ruling from the Commissioner, followed by full briefing, the proper interpretation and scope of Section 671(d).

Where a lower tribunal has not provided sufficient findings of fact or legal analysis, the Court retains authority to remand to an administrative body for additional proceedings and findings. *See, e.g., Town of Victory v. State*, 2004 VT 110, ¶ 24, 177 Vt. 383, 393 ("where court found property valuation methodology "fundamentally flawed," court "should have remanded the matter back to PVR to determine the valuation anew after correcting the flaws the court found."); *Conservation Law Foundation v. Burke*, 162 Vt. 115, 128 (1993) (noting that insufficient record for agency action typically warrants remand). The Court will follow that course in this case.

<u>Conclusion</u>

For the foregoing reasons, the hearing examiner's decision is vacated, and this case is remanded for a new decision consistent with this opinion.

Dated this __ day of July 2020 at Montpelier, Vermont.

_____
Timothy B. Tomasi
Superior Court Judge